Marilyn ZIRN, Plaintiff
Below, Appellant,

v.

VLI CORPORATION, a Delaware corporation, Robert A. Elliott, Charlotte O'Hara Vorhauer, Personal Representative of the Estate of Bruce Vorhauer, Lawrance A. Brown, Jr., Barbara Best North and American Home Products Corporation, a Delaware corporation, Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted: Dec. 9, 1992.
Decided: March 8, 1993.

Michael Hanrahan, Chandlee Johnson Kuhn (argued), and April Caso Ishak, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington; Of Counsel: Terry R. Saunders, and Georgia Vlahos, Susman, Saunders & Buehler, Chicago, IL, for appellant.

Martin P. Tully, Morris, Nichols, Arsht & Tunnell, Wilmington, for appellees; Of Counsel: David R. Jewell, (argued), Rich-

ard J. DeMarco, Jr., Alison S. Berger and Carolyn E. Bassani, Donovan, Leisure, Newton & Irvine, New York City, for appellees VLI Corp. and American Home Products Corp.

J. Michael Brennan (argued), Gibson, Dunn & Crutcher, Irvine, CA, for appellee Charlotte O'Hara Vorhauer, Personal Representative of Estate of Bruce Vorhauer.

Anthony M. Basich, Hill, Wynne, Troop & Meisinger, Los Angeles, CA, for appellees Robert A. Elliott, Lawrance A. Brown, Jr. and Barbara Best North.

Before HORSEY, MOORE and WALSH, JJ.

WALSH, Justice:

This is an appeal from a decision of the Court of Chancery in a class action initiated by Marilyn Zirn ("Zirn"), a shareholder of VLI Corporation ("VLI"). Zirn appeals from a post-trial determination that the defendants-appellees did not breach their duty of disclosure or commit equitable fraud in connection with the merger of VLI with American Hospital Corporation ("AHP").[1] We conclude that the Court of Chancery erred in its application of the standard for determining the materiality of disclosure to shareholders in a merger context. We further conclude that the Trial Court erred in restricting discovery by Zirn into advice given VLI by its new patent counsel regarding a matter which was material to the merger negotiations. Accordingly, we reverse and remand for further proceedings.

I

Until its merger into AHP in December 1987, VLI manufactured and marketed a variety of contraceptives and related products, including its chief product, an over-the-counter female contraceptive known as the Today® Vaginal Contraceptive Sponge (the "Sponge"). The Sponge's unique contraceptive technology was protected by its FDA New Drug Approval Status and by a United States patent which had been issued on July 19, 1983 ("patent").

In 1985, the management of VLI determined that an acquisition of the company was necessary if it were to remain financially viable. After an extensive two-year search in which at least 40 companies were approached, the only potential buyer to express serious interest in acquiring VLI as an entity was AHP, a leading marketer of over-the-counter pharmaceutical products.

Representatives of VLI and AHP met in late August, 1987 to discuss the acquisition. Initially, AHP offered VLI $7.00 per share in the form of a tender offer for all of its outstanding shares. Shortly before the parties met to draft the tender offer agreement, however, VLI learned that its patent on the Sponge had lapsed due to an inadvertent failure to pay a maintenance fee. This was disclosed to AHP on August 28, 1987.

In response to the loss of the patent, the form of the transaction was changed from a tender offer/merger to a merger, although the amount of consideration remained unchanged. In addition, reinstatement of the patent was made a condition of consummation of the transaction. Either party could terminate the agreement if the merger were not consummated by March 1, 1988. After receiving an investment banker's opinion that $7.00 per share was fair to its shareholders, the VLI Board of Directors ("VLI Board") approved the merger agreement on August 30, 1987 and the proposed merger was announced the following day.

On September 3, 1987, VLI's patent counsel petitioned the United States Patent and Trademark Office ("Patent Office") for reinstatement of the patent. The Patent Office denied the petition on September 21, 1987. VLI obtained new patent counsel and filed a petition for reconsideration of the denial on October 21, 1987. Throughout this period, VLI's new patent counsel

---

1. In addition to VLI and AHP, the individual directors of VLI were joined as defendants in the Court of Chancery and appear collectively as appellees in this Court. During the pendency of this appeal, one of the defendant-directors, Bruce Vorhauer, died and, upon suggestion of his death, his personal representative has been appointed in his stead.

was of the opinion that there was a "significant possibility" that the petition for reconsideration would be unsuccessful.

On October 19, 1987, the Dow Jones Industrial Average fell more than 500 points. Stock values in markets around the world plummeted dramatically on that day and in the days that followed. VLI's stock, which had been trading in the range of $4-7/8 to $5-3/8 in the week prior to the decline, reached a low of $3-3/8 on October 26, 1987.

Prior to the market decline, AHP had been conducting a due diligence review of VLI. The review was basically completed by September 30, 1987, but AHP was awaiting VLI's financial reports for the third quarter of 1987. VLI made a partial announcement of its third quarter performance in a press release issued on October 8, 1987 in which it disclosed net income of $.04 per share, an increase of $.32 per share from third quarter 1986. However, on October 22, 1987, AHP received more complete information concerning VLI's third quarter financial results. These results revealed a larger than expected decline of 22 percent in Sponge sales from 1986 third quarter levels. Zirn contends that AHP's Board of Directors did not learn of the drop in Sponge sales until November, 1987.

In any event, on October 27, 1987, AHP determined that it should attempt to renegotiate the August 30 merger agreement. In a meeting with VLI representatives on November 1, 1987, AHP proposed the elimination of the patent reinstatement condition, a change in the form of the acquisition from a merger to a tender offer/merger and a reduction in the purchase price from $7.00 per share to $6.25 per share.

The VLI Board met on November 3, 1987 to consider AHP's modified offer. The VLI Board discussed the lack of any other suitor, VLI's continuing need for an infusion of capital, the turmoil in the financial markets due to the October crash and the possibility that the patent would not be reinstated. After receiving an investment banker's opinion that $6.25 per share was fair to its shareholders, the VLI Board accepted the proposal.

VLI soon began distributing materials to its shareholders, recommending that they tender their shares to AHP. The material included: (i) a letter from VLI's Chief Executive Officer, announcing the $6.25 per share tender offer; (ii) the Schedule 14D-9 filed with the Securities and Exchange Commission by VLI; and (iii) AHP's Offer to Purchase. AHP's Offer to Purchase stated that AHP's purpose in making the tender offer was to "facilitate the acquisition of [VLI] by AHP," and the purpose of the subsequent cash-out merger was "to acquire all outstanding shares not tendered and purchased pursuant to the Offer, thereby completing the acquisition of all the Shares."

VLI's Schedule 14D-9 explained the lapse of the patent and that VLI's new patent counsel had advised VLI that "there is a significant possibility of the reconsideration petition not prevailing...." The 14D-9 further stated that

[i]n order to eliminate unsatisfied and uncertain conditions to the August 30 Merger Agreement, which are unsatisfied, to resolve uncertainty, reduce potential delay and increase the prospects that [VLI] will in fact be acquired by [AHP], [VLI's] Board of Directors after consultation with [VLI's] financial and legal advisors, determined to accept AHP's proposal.

On November 17, 1987, Zirn made written demand upon VLI that the company bring suit against VLI's original patent counsel, general corporate counsel and those responsible for overseeing the maintenance of VLI's patents. The VLI Board established a special committee ("Special Committee") to investigate the patent lapse and respond to Zirn's demand. After conducting an investigation, the Special Committee, consisting of three non-management directors, recommended to the VLI Board that it take no action over the failure to pay the maintenance fee. The Special Committee's counsel informed Zirn of the recommendation by letter. In his letter, the Special Committee's counsel quoted VLI's new patent counsel as having told the Special Committee that there was a

"sound factual basis for claiming that the failure to pay the maintenance fee was unavoidable."

At the expiration of the $6.25 per share tender offer on December 9, 1987, approximately 94.8 percent of the outstanding shares of VLI had been tendered to AHP. On December 31, 1987, AHP acquired the remaining shares through a short-form merger. On January 8, 1988, AHP sent the non-tendering shareholders a Notice of Merger, which informed them that their shares had been converted into a right to receive $6.25 per share and notified them of their appraisal rights.

On December 17, 1987, prior to the short-form merger, Zirn filed suit in the Court of Chancery seeking rescissory and compensatory damages from VLI, its individual directors and AHP. Certain of Zirn's claims, including insider trading and conversion allegations against all defendants, were dismissed by the Court of Chancery in July, 1989. The court refused to dismiss the other claims, however, and, on February 15, 1991, it granted Zirn leave to file an amended complaint and authorized class certification, with the class consisting of those shareholders, with some exceptions, who held VLI stock as of November 16, 1987.

The parties proceeded to trial on Zirn's claim of breach of duty of disclosure and equitable fraud relating to the role of the October 19, 1987 stock market crash in the merger negotiations and the significance of the lapsed patent. After a four-day trial the Court of Chancery granted judgment in favor of defendants as to all claims. This appeal followed.

## II

At the beginning of trial, Zirn relied upon the various counts of the amended complaint asserting breaches of fiduciary duty against the VLI directors concerning the lack of candor, inadequacy of price and the failure to safeguard the patent, as well as a direct claim against AHP for breach of fiduciary duty. Most of these claims were abandoned by Zirn at the conclusion of trial. As a result, the trial court, with Zirn's consent, dismissed all counts of the amended complaint except the disclosure claims and equitable fraud claims relating to the market crash and the patent lapse.

Preliminarily, we note that Zirn argues on appeal that the Court of Chancery never ruled upon her disclosure claims relating to the patent lapse which were not dismissed at the conclusion of the trial. Although VLI disputes this contention, it is not clear that the patent disclosure claims were disposed of in the post-trial decision.[2] The trial court made reference to the patent situation in discussing the myriad factors which prompted the defendants to agree to a change in the original merger agreement, but did not specifically address the disclosure claims as they relate to the patent situation. In any event, in view of our ruling, *infra*, that the trial court's restriction of discovery on the patent disclosure claim requires a retrial on that claim as well, it is unnecessary to address the claimed omission.

### A.

Zirn contends that the market crash was the primary motivation for the renegotiating of the August 30 merger agreement and that defendants' failure to so disclose was equitable fraud and a violation of fiduciary duty. The Court of Chancery found that appellees' disclosures, which admittedly did not address the market crash, were adequate.

Whether disclosures are adequate is a mixed question of law and fact. *Shell Petroleum, Inc. v. Smith*, Del.Supr., 606 A.2d 112, 114 (1992). This Court's review of the formulation of the materiality standard by the lower court, however, is *de novo*. *Stroud v. Grace*, Del.Supr., 606

---

**2.** The Vice Chancellor framed his post-trial decision as addressing "only [plaintiff's] claims that defendants breached their fiduciary duty of adequate disclosure and committed equitable fraud by not disclosing to the stockholders what plaintiff deems to be the primary reason for the change to a tender offer—the October 1987 stock market decline." *Zirn v. VLI Corporation, et al.*, Del.Ch., C.A. No. 9488, Hartnett, V.C., slip op. at 9, 1992 WL 136450 (June 10, 1992).

A.2d 75, 85 (1992). " '[T]his court has the authority to review the entire record and to make its own findings of fact in a proper case.' However, if the findings of the trial judge 'are sufficiently supported by the record and are the product of an orderly and logical deductive process, ... we accept them, even though independently we might have reached opposite conclusions.' " *Shell Petroleum*, 606 A.2d at 114 (citations omitted) (quoting *Levitt v. Bouvier*, Del. Supr., 287 A.2d 671, 673 (1972)). Where "the determination of facts turns on a question of credibility and the acceptance or rejection of 'live' testimony by the trial judge, his findings will be approved upon review." *Levitt*, 287 A.2d at 673.

In rejecting Zirn's claim that the defendants failed to properly disclose the significance of the stock market crash the trial court first determined that AHP stood in a different relationship to the plaintiff class than did the VLI Board. The court ruled that AHP, as an "arms-length third party tender offeror" did not stand in a fiduciary relationship to VLI shareholders but could be guilty of equitable fraud if it made an omission in public statements which mislead shareholders under conditions of detrimental reliance. *Zirn*, slip op. at 11; *See Nicolet, Inc. v. Nutt*, Del.Supr., 525 A.2d 146, 149 (1987). The trial court noted, however, that once the tender offer was effected, AHP became the majority shareholder of VLI and it assumed a new role, with a concomitant fiduciary duty to non-tendering shareholders. Thus, with respect to the short-form merger, the significance of the disclosures made in the January 8, 1988 Notice of Merger, must be viewed in a fiduciary context.

The trial court concluded that in either capacity AHP did not breach any duty of disclosure *vis-a-vis* the plaintiff class. In its pre-merger role, the court ruled, AHP's disclosures were limited to the statement of the general purpose in modifying the original merger agreement—to facilitate the acquisition of VLI. In its post merger disclosure, AHP was not required to disclose the significance of the stock market crash because the decline "was of minor significance, at best," to AHP's decision.

In separately analyzing the disclosure duty of the VLI defendants, the trial court adopted a similar approach. After reviewing the Schedule 14 D–9 disclosure by the VLI directors, which discussed the purposes underlying the revision of the merger agreement, the court ruled that the disclosures were not misleading in omitting any reference to the recent stock market crash. The Court based its conclusions on evidence presented by VLI that the market decline "was not a predominate factor in their decision to accept AHP's revised offer." *Zirn*, slip op. at 15. In the light of such evidence the trial court concluded that Zirn had failed to prove that the market crash was more than a "background factor of such lesser significance than other considerations." *Id.*, slip op. at 16.

On appeal, Zirn argues that the trial court erred in its application of the duty of disclosure by considering the relative importance of the market crash to the directors' motivation in renegotiation of the merger agreement when the focus should have been on its importance to the shareholders. The defendants maintain that the record supports the trial court's conclusion that the stock market crash was a background factor not subject to disclosure and the trial court's factual determination to that effect should be affirmed under the usual standard of appellate review.

██ The requirement that a director disclose to shareholders all material facts bearing upon a merger vote arises under the duties of care and loyalty. *Weinberger v. UOP, Inc.*, Del.Supr., 457 A.2d 701 (1983). In *Rosenblatt v. Getty Oil Co.*, Del.Supr., 493 A.2d 929, 944 (1985), this Court adopted the materiality standard set forth by the United States Supreme Court in *TSC Industries v. Northway*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.... It does not require proof of a substantial likelihood that disclosure of the omitted fact would

have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

426 U.S. at 449, 96 S.Ct. at 2132.

■■■ The *TSC* materiality standard is an objective one, measured from the point of view of the *reasonable investor.* It does not contemplate the subjective views of the directors, nor does it require that the information be of such import that its revelation would cause an investor to change his vote. This Court has held that the *TSC* standard requires that directors provide to shareholders all the information which a reasonable shareholder "would consider important in deciding whether to sell or retain stock." *Rosenblatt,* 493 A.2d at 944 (citing *Lynch v. Vickers Energy Corp.,* Del.Supr., 383 A.2d 278, 281 (1977), *rehearing denied,* (Feb. 3, 1978)). "While it need not be shown that an omission or distortion would have made an investor change his overall view of a proposed transaction, it must be shown that the fact in question would have been relevant to him." *Barkan v. Amsted Industries, Inc.,* Del.Supr., 567 A.2d 1279, 1289 (1989).

■■■ As the standard of disclosure has evolved in the decisions of this Court, the focus is on what a reasonable investor would consider important in tendering his stock, not what a director considers important. In determining what information is to be provided to the shareholders, a director should not be controlled by his or her own subjective views to the exclusion of an objective analysis of what the investor might consider relevant.

In our view the Vice Chancellor departed from the *TSC/Rosenblatt* standard in two important respects: (1) consideration of the VLI director's subjective views and motiva-tions, without addressing what a reasonable stockholder would consider; and (2) ruling that only a directors' primary reason for approving a merger is relevant to the stockholders.

The Vice Chancellor found that the VLI directors did consider "to some extent" the stock market crash but that such consideration, if undisclosed, would constitute a breach of fiduciary duty only if it were the "primary reason" for approving the revisions in the merger agreement. *Zirn,* slip op. at 17. Although the court noted that a "reasonable shareholder might deem relevant the fact that the directors acquiesced in a change due only to temporary market instability," *Id.,* slip op. at 15–16, this is the only reference in the decision to what an objective shareholder would consider relevant. This is not a correct application of the *TSC/Rosenblatt* standard. The test is whether AHP's decision to seek, and VLI's decision to accept, a reduction in the per share price was influenced by the market crash and, if so, whether that information "would have assumed actual significance in the deliberations of a reasonable shareholder." *Rosenblatt,* 493 A.2d at 944 (quoting *TSC,* 426 U.S. at 449, 96 S.Ct. at 2132).

The Vice Chancellor's treatment of the market crash is a view from the directors' perspective, *i.e.,* a subjective evaluation of its significance in the merger rescission. This analysis assumes as its premise that unless the market crash was the primary factor in the directors' decision the stockholders need not be informed. Defendants point to the Vice Chancellor's acceptance, as a matter of credibility, of the trial testimony of VLI directors, at variance with deposition testimony, that the market crash was simply background in the merger modification process. Again, the sincerity of subjective beliefs is not at issue. "[I]f an omission is immaterial, the fact that it was made by a party with some incentive to be less than candid cannot render the omission material." *Barkan,* 567 A.2d at 1288. Conversely, a material omission is not rendered immaterial simply because the party making the omission honestly believes it insignificant. In this respect, a fiduciary's

duty is best discharged through a broad rather than a restrictive approach to disclosure.

We conclude that the Vice Chancellor's application of the materiality test incorrectly placed upon Zirn the burden of proving that the market decline was the primary factor in rescission of the merger agreement. Upon remand, the court should apply an objective standard calculated to determine what information a reasonable VLI shareholder should possess in order to gauge the motivation for the price reduction. The consideration given by the VLI directors to a variety of factors, including the market crash, may be relevant to this inquiry but does not control it.

### III

We next address Zirn's claim that the Court of Chancery erred in limiting discovery concerning communications and advice received by the defendants respecting the patent reinstatement. Because our ruling that the trial court applied an incorrect disclosure standard requires reversal, the trial court's discovery ruling takes on added significance in the event of a rehearing on the role that the patent reinstatement played in the process leading to the revision of the merger agreement between VLI and AHP.

Appellate review of a trial court's ruling limiting discovery is based on an abuse of discretion standard but we exercise *de novo* authority to review the application of the attorney-client privilege. *Citadel Holding Corp. v. Roven*, Del.Supr., 603 A.2d 818, 825 (1992) (citing *Read v. News–Journal Co.*, Del.Supr., 474 A.2d 119 (1984)).

In preparation for trial, Zirn sought to compel production of certain documents withheld by AHP and VLI under assertions of the attorney-client and/or work product privileges. Zirn also sought to require answers to certain questions posed at depositions which, pursuant to the direction of defendants' counsel based on the attorney-client privilege, were not provided. The defendants produced certain documents after the motion to compel production was filed but continued to assert the attorney-client privilege as to approximately 65 documents. The defendants also continued in their refusal to permit deposition questioning of its new patent counsel in specific areas.

### A.

VLI and AHP argued in the Court of Chancery that communications with counsel regarding the patent reinstatement and the merger were privileged under Rule 502(b)(3) of the Delaware Uniform Rules of Evidence ("Delaware Rules of Evidence") as "a matter of common interest."[3] The Vice Chancellor ruled, however, that the two companies had adverse interests prior to the November 3, 1987 revised agreement leading to the merger and that any discussions regarding the negotiations of the terms of the original agreement were not privileged. The Court determined that documents concerning reinstatement of the patent, while relevant, were, nonetheless, protected work product. The Court rejected Zirn's argument that there had been a waiver of the advice of patent counsel through references to that advice in the disclosure documents.

The Vice Chancellor permitted limited document production, however through his ruling on August 13, 1990 and his rulings at trial, he held, in effect, that Zirn was not entitled to inquire into the specific advice

---

**3. RULE 502. LAWYER–CLIENT PRIVILEGE.**

\* \* \* \* \* \*

**(b) General Rule of Privilege.** A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

that VLI's new patent counsel had given VLI, and shared with AHP, concerning the prospects of patent reinstatement. In our view, this restriction was an unjustified limitation in an area having a direct bearing upon the defendants' duty of disclosure.

The precise issue posed is whether a corporation may invoke the attorney-client and work product privileges regarding information deemed material to a shareholder's decision to tender stock in the face of partial disclosure of such advice. Under the circumstances here present, we are of the view that such information cannot be protected.

█ The attorney-client privilege is intended to encourage full and frank communication between clients and their attorneys. 8 *Wigmore on Evidence*, (McNaughton Ed.) §§ 2290–2292. The privilege was recognized at common law but received formal promulgation in Delaware through the adoption of the Delaware Rules of Evidence. Rule 502 of the Delaware Rules of Evidence is consistent with previous Delaware jurisprudence in extending the privilege to all communications, whether written or oral, made for the purpose of facilitating the rendition of professional legal services. *Ramada Inns, Inc. v. Dow Jones & Co., Inc.*, Del.Super., 523 A.2d 968, 971 (1986).

The attorney-client privilege finds full application where a corporation is the client seeking professional advice and assistance. *UpJohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Where the privilege is sought to be asserted in litigation initiated by a shareholder, however, an inevitable conflict arises. The corporation may only assert the privilege through its agents, *i.e.*, its officers and directors, who must "exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals." *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 349, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985). Thus, the privilege, as reflected in Rule 502 of the Delaware Rules of Evidence, is not absolute and, if the legal advice relates to a matter which becomes the subject of a suit by a shareholder against the corporation, the invocation of the privilege may be restricted or denied entirely. *Valente v. Pepsico, Inc.*, D.Del., 68 F.R.D. 361 (1975).

The trial court recognized the standing of the plaintiff class to seek disclosure of communications otherwise deemed protected by the attorney-client privilege provided plaintiff could establish "good cause" for such disclosure under the standards articulated in *Garner v. Wolfinbarger*, 5th Cir., 430 F.2d 1093, 1104 (1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). Zirn contended that "good cause" was present because the VLI directors should not be permitted to shield from the shareholder-beneficiaries information directly affecting the financial interests of those beneficiaries. The trial court rejected the claim of good cause ruling that there was no "obvious conflict of interest" present. *Zirn v. VLI Corporation, et al.*, Del.Ch., C.A. No. 9488, Hartnett, V.C., slip op. at 22, 1990 WL 119685 (Aug. 13, 1990) (MEMORANDUM OPINION).

█ While we do not share the Vice-Chancellor's conclusion that there was no showing of good cause based on director conflict of interest, in our view the privilege was waived here through partial disclosure. VLI determined that the advice it received from its new patent counsel was material to the shareholders' decisions to sell their stock. This is evident from VLI's decision to disclose part of that advice in its 14D–9. Specifically, VLI disclosed that its new patent counsel had advised that there was "a significant possibility" that the petition for reconsideration of the initial decision denying reinstatement would not prevail in the Patent and Trademark Office. Such partial disclosure "of the contents of a privileged communication surrenders the privilege as to those communications." *Citadel Holding Corp. v. Roven*, 603 A.2d at 825.

The purpose underlying the rule of partial disclosure is one of fairness to discourage the use of the privilege as a litigation

weapon in the interest of fairness. A party should not be permitted to assert the privilege to prevent inquiry by an opposing party where the professional advice, itself, is tendered as a defense or explanation for disputed conduct. *GAB Business Services Inc. v. Syndicate*, 809 F.2d 755, 762 (11th Cir., 1987). VLI introduced portions of the advice of its new patent counsel in support of its claim that the disclosures concerning the prospect of the patent reinstatement were adequate given the uncertainty surrounding that issue. It would be manifestly unfair to permit selective utilization of these portions and at the same time assert the attorney-client privilege to shield any inquiry into the totality of counsel's advice and its factual basis. *International Paper Co. v. Fibreboard Corp.*, D.Del., 63 F.R.D. 88, 92 (1974).

### B.

■ The assertion by defendants of work product privilege raise concerns separate from those implicated by the attorney-client privilege. Although the concepts are distinct, both arise from the attorney-client relationship. The work product privilege, however, serves a different purpose, one related to the adversary system of litigation—the protection of an attorney's private files and recorded impressions from discovery by opposing counsel. *Hercules Inc. v. Exxon Corp.*, D.Del., 434 F.Supp. 136, 150 (1976). The work product rule now embodied in Rule 26(b)(3) of the Federal Rules of Civil Procedure and its Court of Chancery counterpart,[4] seeks to strike a balance between the full disclosure spirit of modern discovery rules and the adverse effect the fear of disclosure might have on the lawyer's efforts to advance his client's

cause. *Id.* at 151. In order to qualify under work product immunity, "materials [must] be written specifically in preparation for threatened or anticipated litigation." *Riggs National Bank of Washington, D.C. v. Zimmer*, Del.Ch., 355 A.2d 709, 715 (1976).

■ The Vice Chancellor ruled that, because the patent reinstatement issue was relevant to the breach of fiduciary claim asserted in the Zirn litigation, documents prepared by VLI's new patent counsel in the patent reinstatement proceedings might be deemed to have been prepared "in anticipation of litigation." Although this is a broad reading of the "anticipation" standard, it is not dispositive of Zirn's claim for production. In our view, the same principle of partial disclosure which governed communication with VLI's new patent counsel applies to documentation prepared in connection with the patent reinstatement.

Apart from reasons of partial disclosure, however, we are satisfied that Zirn has demonstrated "good cause" for production of documents prepared in anticipation of the patent litigation. Of the factors set forth in *Garner v. Wolfinbarger*, 430 F.2d at 1104, which support the requisite showing of "good cause" that a shareholder must demonstrate to overcome a corporation's claim of privilege, the following appear present here. First, the plaintiff class have asserted an obviously colorable claim of breach of the fiduciary duty of candor. Second, in order to counter defendants' partial disclosure of the advice given by its new patent counsel as part of the mix of disclosed information supporting the merger revision, Zirn is entitled to examine that advice in full context.[5] Third, in view of

---

**4.** The Vice Chancellor recognized the relevancy of the patent reinstatement problem to the merger revision. "Clearly, documents regarding the reinstatement of the patent are relevant to the plaintiff's claim that the lapse, and ultimate reinstatement, of the patent provided [AHP] with an excuse for reducing the consideration paid to [VLI's] stockholders." *Zirn v. VLI Corporation, et al.*, Del.Ch., C.A. No. 9488, Hartnett, V.C., slip op. at 19, 1990 WL 119685 (Aug. 13, 1990).

**5.** In pertinent part Rule 26(b)(3) provides:

**(3) Trial Preparation: Materials.** Subject to the provisions of paragraph (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under paragraph (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need

the general applicability of the attorney-client privilege, there appears to be no alternative source for discovering such information. Finally, since the patent has now been reinstated, there appears little risk of revelation of trade secrets or other information in which the corporation has a confidential interest.

## IV

In this Court, the corporate and individual defendants have asserted, as a common position, that, regardless of whether their disclosures were adequate, they are nonetheless entitled to judgment in their favor because (1) Zirn failed to prove damages; (2) the equitable fraud claim cannot be maintained as a class action; and (3) the VLI directors are insulated from liability by VLI's Certificate of Incorporation.[6] In the interest of completeness and in anticipation of a rehearing upon remand, we address these claims summarily.

■ With respect to the absence of proof on the damages claim, defendants argue that since the uncontroverted evidence established that the price of $6.25 per share was fair to VLI shareholders, Zirn has failed to prove any damages. This contention, however, ignores Zirn's position at trial that a measure of damages could be found in difference between the original $7 per share merger price and the $6.25 approach by shareholders after the disclosures sought to be invalidated. While we express no opinion on the persuasiveness of Zirn's damages proof and the trial court did not reach the question of damages, it suffices to note that the record is not devoid of proof on that issue.

■ As to the argument that class certification was not appropriate in this case, so long as the fiduciary claims survive,

class certification continues to be appropriate. Moreover, unlike *Gaffin v. Teledyne, Inc.*, Del.Supr., 611 A.2d 467 (1992), which defendants cite in support of their contention, no cross-appeal was filed in this Court on the issue of class certification.

■ Finally, Article Ninth of VLI's Certificate of Incorporation does not insulate the VLI directors from liability. This provision, which purports to protect directors from monetary liability for breaches of fiduciary duty, does not shield directors from liability for equitable fraud. Moreover, the legislative history of the statute authorizing this provision, 8 *Del.C.* § 102(b)(7), indicates that corporations are empowered to shield directors from breaches of the duty of care, not the duty of loyalty, which also embraces the duty of disclosure that is at issue here. 1 R. Balotti & J.F. Finkelstein, The Delaware Law of Corporations and Business Organizations, § 4.19 at 4–330 (1991). Even defendants' own proxy materials note that the provision's applicability is limited to the duty of care.

## V

We leave to the trial court's discretion the extent and manner for supplementation of the record incident to any rehearing. We assume, however, that our ruling in Part III of this opinion will require additional discovery.

The decision of the Court of Chancery is REVERSED and this matter is REMANDED for further proceedings consistent with this opinion.

---

of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the Court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

**6.** The Vice Chancellor did not expressly pass upon the merits of the damages and Certificate of Incorporation defenses since his ruling in favor of defendants on the significance of the market decline rendered alternative defenses moot. These arguments were fairly presented in the trial court, however, and thus are appropriately considered on appeal. Supr.Ct.R. 8.