**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 25, 2026

Blake Rohrbacher, Esquire
Kyle H. Lachmund, Esquire
Sandy Xu, Esquire
Elizabeth J. Freud, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801

Bradley R. Aronstam, Esquire
S. Michael Sirkin, Esquire
Holly E. Newell, Esquire
Benjamin M. Whitney, Esquire
Kevin A. Rudolph, Esquire
Ross Aronstam & Moritz LLP
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801

RE: *Albertsons Companies, Inc. v. The Kroger Co.*,
C.A. No. 2024-1276-LWW

Dear Counsel:

This letter resolves Albertsons Companies, Inc.'s motion to compel The Kroger Co. to produce documents under a stipulated privilege waiver (the "Motion"). For the reasons explained below, the Motion is denied, except to the limited extent of providing guidance on the scope of the stipulated waiver as it applies to internal law firm communications.

I.      BACKGROUND

This action arises from the failed merger of grocery retailers Albertsons and Kroger. Albertsons claims that Kroger willfully breached its obligation to use "best efforts" (and, ultimately, to take "any and all actions") to eliminate antitrust

impediments to the merger by proposing deficient divestiture packages.[1]  During discovery, Kroger witnesses testified that they believed the company was complying with its contractual duties based on legal advice from Arnold & Porter Kaye Scholer LLP and Weil, Gotshal & Manges LLP.[2]  Albertsons then asserted that Kroger had put at issue "legal advice regarding divestiture-related antitrust issues[.]"[3]

Kroger stipulated to a defined waiver of privilege over "legal advice on the construction of the divestiture packages and the adequacy of the divestiture packages from a regulatory perspective."[4]  It agreed to review and produce internal firm communications that "fall within the scope" of the waiver.[5]  Kroger explained that its production encompassed "not only direct communications to the client, but also documents that reflect the formulation of legal advice."[6]  Albertsons took issue with this approach and filed the Motion.

The present dispute centers on the breadth of the waiver and whether Kroger is improperly withholding internal law firm communications.

---

[1] Verified Am. Compl. (Dkt. 17) ("Compl.") ¶¶ 374-410; *see* Pl.'s Mot. to Compel Def. to Produce Docs. Pursuant to Stipulated Privilege Waiver (Dkt. 225) ("Mot.") ¶ 1.

[2] *See, e.g.*, Mot. Ex. 6 at 92-93.

[3] Mot. Ex. 5 at 42.

[4] Mot. Ex. 2 at 1-2.

[5] Mot. Ex. 3 at 1.

[6] Mot. Ex. 4 at 2.

## II.    ANALYSIS

The attorney-client privilege "exists to 'encourage full and frank communication between clients and their attorneys[.]'"[7]  When a party makes the "conscious decision" to waive this privilege and advance an advice of counsel defense, it "operates as a partial waiver of the privilege."[8]  The partial waiver's scope is limited to documents that "concern the same subject matter[]" of the waiver and "ought in fairness to be considered together."[9]

My analysis of the Motion begins with the text of the parties' stipulated waiver.  Kroger agreed to waive privilege over "*legal advice*" concerning the divestiture packages.[10]  Kroger asserts that to fall within the waiver, a document must "involve[] the formulation or communication of legal advice to Kroger,"[11] and be connected to a "specific proposal or analysis being prepared for [the] client."[12]

---

[7] *In re Quest Software Inc. S'holders Litig.*, 2013 WL 3356034, at *2 (Del. Ch. July 3, 2013) (quoting *Zirn v. VLI Corp.*, 621 A.2d 773, 781 (Del. 1993)).

[8] *Mennen v. Wilm. Tr. Co.*, 2013 WL 5288900, at *5 (Del. Ch. Sept. 18, 2013).

[9] Del. R. Evid. 510(b); *see also Mennen*, 2013 WL 5288900, at *5.

[10] Mot. Ex. 2 at 2 (emphasis added); *see supra* note 4 and accompanying text (quoting the text of the waiver).

[11] Mot. Ex. 4 at 2.

[12] Mot. Ex. 5 at 1.

Albertsons counters that the waiver requires the production of all Arnold & Porter and Weil documents relating to the construction or adequacy of the divestiture packages, regardless of whether they "reflect[] advice actually provided to Kroger."[13] This interpretation reads the phrase "legal advice" out of the waiver. "Legal advice" requires a communicative act to a client.[14] It does not extend to every uncommunicated musing of a law firm associate or a partner's internal reaction to a meeting.

Kroger's approach—producing direct client communications alongside internal documents that reflect the formulation of that advice—is consistent with the waiver's text.[15] It also aligns with precedent. Delaware courts are chary of construing a privilege waiver to encompass internal lawyer communications that never culminate in advice to the client.

In *In re Dairy Mart Convenience Stores, Inc., Derivative Litigation*, for example, Chancellor Chandler limited a privilege waiver to "documents that were obtained, digested, or created [by outside counsel] and *then in any way*

---

[13] *See* Mot. ¶ 3; *see also id.* ¶¶ 20-21.

[14] *Legal Advice*, Black's Law Dictionary (12th ed. 2024) (defining "legal advice" as "advice of counsel," meaning "[t]he guidance given by lawyers to their clients"); *see* Del. R. Evid. 502(b); *see also* Def./Countercl. Pl.'s Opp'n to Mot. to Compel (Dkt. 233) ("Opp'n") ¶ 11.

[15] Opp'n ¶ 8 (quoting Mot. Ex. 4 at 2).

*communicated to the outside directors* by [counsel.]"[16]  Similarly, in *Pfizer, Inc. v. Warner-Lambert Co.*, he drew a "practical" line between "documents, notes of conversations, [and] advice of counsel that w[ere] given to the [client]" and "advice, notes, memoranda, et cetera, generated by [outside] counsel, which w[ere] never presented" or "offered to the [client.]"[17]  The former fell within a privilege waiver; the latter did not.  The Court of Chancery has maintained this distinction to preserve room for lawyers to freely brainstorm.[18]  "Disclosing advice the[] [client] never received moves no soil."[19]

---

[16] C.A. No. 14713, at 2-3 (Del. Ch. June 8, 1999); *see* Compendium of Selected Authorities Cited in Def./Countercl. Pl.'s Opp'n to Mot. to Compel (Dkt. 233) Ex. 3.

[17] C.A. No. 17524-CC, at 88-89 (Del. Ch. Dec. 21, 1999) (TRANSCRIPT); *see also iBasis, Inc. v. Koninklijke KPN, N.V.*, C.A. No. 4774-VCS, at 8-9 (Del. Ch. Oct. 5, 2009) (TRANSCRIPT) (ordering internal law firm documents to be produced only if the document "was the basis for advice given orally"); *City of Roseville Empls.' Ret. Sys. v. Ellison*, C.A. No. 6900-CS, at 4-5 (Del. Ch. May 29, 2013) (TRANSCRIPT) ("[A]s I understand the *Dairy Mart* ruling and cases like it . . .  If . . . there was a waiver of privilege as to the advice the law firm gave, that does not mean that every internal memorandum at the law firm where . . . people are kicking ideas back and forth, that you have to disclose that[.]"); *Mennen*, 2013 WL 5288900, at *5-6.

[18] *See, e.g.*, *High River Ltd. P'ship v. Hallwood Realty, LLC*, C.A. No. 20276-VCS, at 6-7, 10 (Del. Ch. June 6, 2003) (TRANSCRIPT) ("I'm not going to order a production at this time[] . . . I think the advisors ought to have some space to do some thinking, unless I hear there's been anything communicated."); *R2 Invs., LDC v. Icahn*, C.A. No. 1862-N, at 47-48, 57-58 (Del. Ch. Mar. 20, 2006) (TRANSCRIPT) (recognizing that there must be "some room for thinking[]" where documents reflecting "lawyers brainstorming internally" about "the best way to advise [their] clients[]" need not be produced by the outside law firm).

[19] *TCV VI, L.P. v. TradingScreen Inc.*, 2015 WL 5674874, at *7 (Del. Ch. Sept. 25, 2015).

Albertsons' Motion ignores this precedent.[20] It instead relies on *Bandera Master Fund LP v. Boardwalk Pipeline Partners, LP* to argue that all "internal workings" of Kroger's outside counsel are discoverable.[21] That is, it reads *Bandera* to establish a general rule that non-client-facing documents must be produced whenever a party puts its lawyers' advice at issue.

*Bandera*, however, is factually unique. There, a defense was predicated on a formal opinion of counsel, which placed the law firm's own good faith directly at

---

[20] Albertsons responded to the precedent in its reply brief. *See* Reply in Supp. of Pl.'s Mot. to Compel Def. to Produce Docs. Pursuant to Stip. Privilege Waiver (Dkt. 235) ("Reply") ¶¶ 12-18. It reads *High River* as suggesting that the court ordered production of "free-thinking" and "lawyer brainstorming" documents. *Id.* ¶ 17. But the transcript reveals that then-Vice Chancellor Strine protected purely intra-firm notes, observing that advisors "ought to have some space to do some thinking" without disclosure, unless the materials were communicated to the client. *High River*, C.A. No. 20276-VCS, at 10. Albertsons' discussion of *Ellison* is also misplaced. Although Albertsons asserts that the case mandates production of internal lawyer communications, the court shielded documents where attorneys were "kicking ideas back and forth[.]" *Ellison*, C.A. No. 6900-CS, at 4-5; *see* Reply ¶ 13. Albertsons' interpretation of *Mennen* also overlooks the court's statement that the waiver was designed "to test what information had been conveyed by the client to counsel and vice-versa." *Mennen*, 2013 WL 5288900, at *6; Reply ¶ 16. Finally, Albertsons contends that *iBasis* "did not address internal law firm communications." *Id.* ¶ 17. Yet the court held that firm-side documents must be produced only "if there is a memo that was the basis for advice given orally to the committee . . . or any other document that was the basis for the oral advice[.]" *iBasis*, C.A. No. 4744-VCS, at 8-9.

[21] Mot. ¶ 27; *Bandera Master Fund LP v. Boardwalk Pipeline P'rs, LP*, C.A. No. 2018-0372-JTL, at 44 (Del. Ch. Apr. 7, 2020) (TRANSCRIPT) (holding that an outside law firm's "internal workings" are "probative and important to have" because they could show that "the client was really pushing hard for advice that went in directions favorable to its interests").

issue.[22]  A second waiver in *Bandera* concerned the objective question of whether certain disclosures were required by federal securities laws.[23]  Here, by contrast, Albertsons is claiming willful breach of contract, which turns on Kroger's actual knowledge and subjective impressions.  The uncommunicated views of Arnold & Porter or Weil attorneys are not the measure of Kroger's intent.

Nevertheless, Albertsons' concern that "[t]here [is no] principled way for a reviewer looking at a document" to apply this distinction is well taken.[24] Distinguishing between protected intra-firm deliberations and materials that reflect the creation of legal advice is a difficult line-drawing exercise.[25]  For guidance in Kroger's review, internal "back and forth" among lawyers—summarizing a meeting, workshopping theories, or reflecting internal debate—is not legal advice.[26]  But when a firm-side document is used to draft or prepare legal advice for communication to the client—whether that advice is written or oral—it ceases to be

---

[22] *Bandera*, C.A. No. 2018-0372-JTL, at 5, 26.

[23] *See id.* at 35 (noting the defense was that the disclosures were legally required, which "doesn't just turn on the defendants' motives[,] but on what the law required," thereby distinguishing it from a standard advice-of-counsel defense where subjective intent is paramount).

[24] Mot. ¶ 6.

[25] *See R2 Invs.*, C.A. No. 1862-N, at 47 (recognizing that Delaware law's approach to protecting internal law firm communications does not reflect "perfect line drawing").

[26] *Ellison*, C.A. No. 6900-CS, at 4-5.

mere brainstorming.[27]  A document reflecting the formulation of legal advice to Kroger falls within the scope of the waiver and must be produced.[28]

## III.  CONCLUSION

Albertsons' Motion is denied, unless Kroger's production deviates from the above guidance.  Kroger must apply the parameters described in this letter opinion to its document review and production.  IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[27] Kroger has withheld documents reflecting "an attorney's contemporaneous reaction to a meeting or email that is not connected to any specific proposal or analysis being prepared for [the] client."  Opp'n ¶ 19 (quoting Mot. Ex. 5 at 1); *see also* Mot. ¶ 4.  This carve-out is overbroad.  If an internal law firm communication—including a "contemporaneous reaction"—memorializes, reflects, or discusses information conveyed to the client, it should be produced.  Opp'n ¶ 8 (quoting Mot. Ex. 5 at 1).

[28] *See* Tr. of Telephonic Oral Arg. on Pl.'s Mot. to Compel (Dkt. 246) 26-27 (Kroger's counsel acknowledging that protecting internal analysis is necessary but agreeing that once it is clear a document "is being formed into a communication, whether that communication is the actual document itself or a verbal communication . . . to be used at a meeting or a call, that document would get produced").