# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. N15M-05-009 |
| BORGWARNER INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

Submitted: April 15, 2016
Decided: July 14, 2016

On Motion of BorgWarner Inc. and BorgWarner Morse TEC LLC
For Reconsideration of Commissioner's Order Granting, in Part, and
Denying, in Part, Their Motion to Compel. **DENIED.**

## OPINION

Michael B. Rush, Esquire, Jennifer C. Wasson, Esquire, Potter, Anderson & Corroon LLP, Wilmington, Delaware, Attorneys for Defendants BorgWarner Inc. and BorgWarner Morse TEC Inc.

Sean M. Brennecke, Esquire, Richard M. Beck, Esquire, Klehr, Harrison, Harvey, Branzburg LLP, Wilmington, Delaware, Attorneys for Intervenor First State Insurance Company.

Thaddeus J. Weaver, Esquire, Dilworth Paxson, LLP, Wilmington, Delaware, Attorney for Intervenor The North River Insurance Company.

**SCOTT, J.**

## Introduction

Before the Court is a Motion for Reconsideration of Commissioner's Order filed by Defendants, BorgWarner Inc. and BorgWarner Morse TEC LLC (collectively, "BorgWarner"). BorgWarner seeks reconsideration of an order issued on March 15, 2016, by Commissioner Manning granting, in part, BorgWarner's motion to compel the Owens Corning/Fibreboard Asbestos Personal Injury Trust (the "Trust"), a Delaware trust, to comply with a subpoena served on May 6, 2015 and denying, in part, Intervenors', North River Insurance Company ("North River") and First State Insurance Company ("First State") (collectively, "Intervenors"), motion to quash BorgWarner's subpoena. The Court has reviewed and considered the Parties' written submissions, in light of the Commissioner's order, the transcript of the hearing before the Commissioner, and the associated record. Because BorgWarner has failed to show on the record that the Commissioner's order is contrary to law, this Court may not reconsider this non case-dispositive matter, *de novo* or at all. Accordingly, BorgWarner's Motion for Reconsideration of the Commissioner's Order is **DENIED.**

## Background

In 1985, numerous insurers, including Intervenors, entered into a settlement agreement with Owens Corning Fiberglas Corp. ("Owens Corning") to facilitate the resolution of insurance coverage disputes between the parties thereto, as well as

1

the asbestos claims themselves (the "Wellington Agreement"). Pursuant to the Wellington Agreement, the signatories agreed to resolve all disputes through an alternative dispute resolution ("ADR") process, which led to such an ADR proceeding involving Intervenors and Owens Corning in 1989 ("Wellington ADR"). In addition to certain confidentiality provisions in the Wellington Agreement, Intervenors and Owens Corning entered into a separate confidentiality agreement to ensure confidential treatment for certain documents exchanged in the Wellington ADR.

On May 6, 2015, in connection with an unrelated insurance coverage matter currently pending in Illinois state court, BorgWarner served a subpoena on the Custodian of Records for the Trust, seeking production of the complete file in connection with the Wellington ADR.

On August 21, 2015, BorgWarner filed a motion to compel. Subsequently, First State and North River separately moved to intervene, opposed BorgWarner's motion to compel, and filed motions to quash the subpoena. On December 14, 2015, a hearing was held before Commissioner Manning regarding the outstanding motions, where he ultimately deferred decision and requested supplemental memoranda from the Parties. On March 15, 2016, Commissioner Manning issued an Order granting, in part, BorgWarner's motion to compel and denying, in part,

the Intervenors' motions to quash, which Order was subsequently corrected on March 22, 2016.

On March 30, 2016, BorgWarner timely filed a motion for reconsideration of Commissioner's Order pursuant to Superior Court Civil Rule 132(a)(3). On April 13, 2016, Intervenors timely filed their Oppositions to BorgWarner's Motion for Reconsideration.

### Parties' Contentions

BorgWarner has moved for reconsideration and *de novo* review of the Commissioner's Order granting, in part, and denying, in part, its motion to compel, arguing that it is contrary to law, because Intervenors failed to demonstrate the specific harm necessary to satisfy a motion to quash, other courts have permitted discovery of confidential arbitration documents as well as materials subject to confidentiality agreements, the insurers have taken contradictory positions on confidentiality in other cases, the Delaware Rapid Arbitration Act does not apply, the Wellington Agreement and separate confidentiality agreement do not protect the materials sought, and North River effectuated a subject matter waiver of the arbitration materials and is judicially estopped from taking a contrary position on defense costs.

In response, North River argues that the Commissioner's Order properly applied Delaware law favoring settlement, ADR, and enforcement of contracts, as

well as the concomitant confidentiality associated with ADR, because the cases relied upon by BorgWarner are distinguishable. Further, North River argues that it did not waive confidentiality of all of the Wellington ADR materials and judicial estoppel does not apply.

Similarly, First State argues that the Commissioner properly applied Superior Court Civil Rules 26 and 45 in protecting the Wellington ADR materials and the cases relied upon by BorgWarner are either not relevant and/or not binding, particularly as none of the decisions implicate Delaware public policy protecting the integrity of private arbitration. Further, First State argues that BorgWarner, again, misconstrues the confidentiality provisions in the Wellington documents, and all of BorgWarner's remaining arguments lack merit.

### Standard of Review

Pursuant to Superior Court Civil Rule 132, Commissioners are empowered to conduct non case-dispositive hearings and to hear and determine any non case-dispositive matter pending before the Court, as well as to conduct case-dispositive hearings and to submit to a judge of this Court proposed findings of fact and recommendations for the disposition, by a judge, of any such case-dispositive matter.[1] Consequently, whether the matter heard by the commissioner is case-

---

[1] Super. Ct. Civ. R. 132(a)(3), (a)(4).

4

dispositive or not determines the standard of review that a judge of this Court must apply when a party files an exception thereto.[2]

With regard to motions for reconsideration of a Commissioner's order in a non case-dispositive matter, Rule 132 permits reconsideration by a judge of this Court *"only* where it has been shown on the record that the Commissioner's order is based upon findings of fact that are clearly erroneous, or is contrary to law, or is an abuse of discretion."[3] Therefore, it follows that where, as here, the moving party contends that the Commissioner's order is contrary to law, the burden is on the moving party to show on the record where the order contravenes the law before a judge of this Court may reconsider the matter, *de novo* or at all.[4]

## Discussion

As explained more fully below, a near majority of the arguments put forth by BorgWarner in its attempt to convince this Court that reconsideration of the Commissioner's Order is permitted on the sole basis that it is contrary to law,

---

[2] *Compare* Super. Ct. Civ. R. 132(a)(3)(iv) (permitting reconsideration of non case-dispositive matter "only where it has been shown on the record that the Commissioner's order is based on findings of fact that are clearly erroneous, or is contrary to law, or is an abuse of discretion" *with* R. 132(a)(4)(iv) (mandating *de novo* determination in case-dispositive matter of objected to portions of Commissioner's report or proposed findings of fact or recommendations).
[3] Super. Ct. Civ. R. 132(a)(3)(i), (iv) (emphasis added).
[4] *New Castle Cnty. v. Kostyshyn, et al.*, 2014 WL 1347745, at *3 (Del. Super. June 26, 2014); *see Doe v. Slater*, 2014 WL 6669228, at *2-3 (Del. Super. Nov. 12, 2014) (applying non case-dispositive standard of review pursuant to Super. Ct. Civ. R. 132(a)(3)(iv) to defendants' motion for reconsideration of commissioner's order denying motion to compel and finding review of entire record appropriate only where subsequent case preparation produced relevant medical evidence that was not available to the commissioner but which effectively made order contrary to law).

5

either fail to include "law" that the Court is bound to apply or follow or, as to areas of unsettled law, fail to show how the Commissioner's reasoning in declining to follow another jurisdiction's holding is contrary to the law of Delaware. In those instances, BorgWarner has simply failed to meet its burden under Superior Court Civil Rule 132. As to BorgWarner's remaining arguments, BorgWarner has failed to show that the Commissioner's Order is contrary to the applicable law.

## A. Good Cause Under Rule 26

BorgWarner has failed to show that the Commissioner's Order is contrary to law for not imposing a burden on Intervenors to show that the Trust's compliance with the subpoena would result in specific harm to them. Rule 26(c) is titled "Protective orders" and allows the Court, "[u]pon motion by a party or by the person from whom discovery is sought, and *for good cause shown*, . . . [to] make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[5] BorgWarner's argument that the Commissioner erred in not applying the "good cause" requirement espoused by Rule 26(c) fails to show why Rule 26(c) is applicable in the absence of any request by a party or the Trust for a protective order or that a showing of good cause is otherwise required under the applicable discovery rules.

---

[5] Super. Ct. Civ. R. 26(c) (emphasis added).

First, BorgWarner's citation to *Tekstrom, Inc. v. Salva*, a Court of Common Pleas case, offers little guidance to this Court in interpreting its own discovery rules and in no way stands as binding precedent in any event.[6] Second, BorgWarner's citation to *Drysdale v. Noble* is inapposite, as *Drysdale* involved the application of Rule 26(c) to the defendant's request for a protective order, which is markedly different from the circumstances *sub judice*, where Intervenors are not merely seeking to prevent the public's access to any pre-trial discovery, but are seeking to prevent discovery in the first place.[7]

Therefore, because BorgWarner has failed to show that the Intervenors' motions to quash raised a protective, and not merely a discoverability, issue, it has failed to meets its burden of showing how the Commissioner's Order was contrary to law by not requiring a showing of good cause under Rules 26(b)(1)(a)(i) and 45(c)(3)(A)(ii) and by not applying Rule 26(c).[8]

## B. Other Protected Matter Under Rule 45

BorgWarner advances several arguments challenging the Commissioner's purported reliance on the confidentiality protections intended by the parties to the

---

[6] 2007 WL 3231632, at *5 (Del. Com. Pl. Oct. 25, 2007). Furthermore, *Tekstrom* addressed the issue of scope in conjunction with a motion to quash brought pursuant to Ct. Com. Pl. Civ. R. 45(b), which Rule in no way corresponds to Super. Ct. Civ. R. 45(c)(3)(A) at issue here.

[7] 2003 WL 21481005, at *1 (Del. Super. June 19, 2003).

[8] The Court notes that, though the Commissioner's Order referenced "Rule 26(a)(1)(a)(i)," when it quoted text from Rule 26(b)(1)(a)(i), in recognizing substance over form, the Court treats the Commissioner's citation to Rule 26 as one specifically to § (b)(1)(a)(i). Comm'r Order 11.

Wellington Agreement and Confidentiality Agreement as a basis for denying discovery, which the Court will address *in seriatim.*

### 1. Confidentiality of the Wellington ADR

BorgWarner contends that the Commissioner's finding that the Wellington parties intended every part of the arbitration to be confidential is not supported by the text of the Wellington Agreement or the "side" confidentiality agreement, which makes it contrary to law. At the outset, the Court notes that, in making this argument, BorgWarner misconstrues the Commissioner's reasoning in this regard, as the Order clearly states, in conjunction with its determination that the parties intended every party of the arbitration to be confidential, that "the Court, *while not bound by this fact,* will honor the agreement of the parties in this regard *as a matter of public policy* for the reasons discussed below."[9] Thus, the Commissioner's Order did not, in fact, "den[y] much of the information that BorgWarner subpoenaed on [such] grounds."[10]

Moreover, as to the mechanics of its argument, BorgWarner fails to cite to any case law (binding or not), statute, or otherwise in support of its contention and, thus, the Court is without any basis upon which to review the Commissioner's finding in this regard. Therefore, even if BorgWarner's argument pertained to an

---

[9] Comm'r Order 6 (emphasis added).
[10] BorgWarner's Mot. for Recons. 20-21.

8

actual doctrine of the decision, BorgWarner has not met its burned of showing that the Commissioner's Order is contrary to law.[11]

### 2. Discovery of Confidential Materials

BorgWarner contends that, because other courts permit discovery of materials subject to confidentiality protections, the Commissioner's Order declining to follow those decisions is contrary to law.

First, BorgWarner argues, without considering or even mentioning Delaware public policy's preference for arbitration—a finding that undergirds the Commissioner's Order in this regard—that the Seventh Circuit's holding in *Gotham Holdings, LP v. Health Grades, Inc.*, which affirmed the decision of the Northern District of Illinois compelling the production of confidential arbitration documents[12], "is directly on point and mandates disclosure of the documents that [it] seeks."[13] To begin with, in making its decision to compel production, the Seventh Circuit relied on the following distinguishable facts: (i) the ADR Agreement expressly provided that materials from the arbitration may be disclosed in response to a subpoena, such that the parties agreed that they would not

---

[11] Even so, a cursory review of BorgWarner's argument that the Commissioner's Order is contrary to the "plain text" of the Wellington documents leads the Court to concur with the Commissioner's rather candid description of BorgWarner's interpretation of certain provisions of the Wellington Agreement as "tortured." Further, as to the "side confidentiality agreement," BorgWarner devotes a mere three sentences to its alleged inapplicability to the matter at hand, none of which point the Court in the direction of any law, so to speak.

[12] 580 F.3d 664, 666 (7th Cir. 2009).

[13] BorgWarner's Mot. for Recons. 11.

voluntarily disclose any information related to the arbitration; and (ii) there is no national policy favoring arbitration.[14] Even if the facts and reasoning in *Gotham* were completely analogous to the case *sub judice*, which BorgWarner has failed to show, decisions from the Seventh Circuit are not binding on this Court. Therefore, BorgWarner's argument, even under ideal circumstances, lacks merit.

Second, and in similar fashion, BorgWarner contends that the Commissioner's failure to follow the decision of the District of Delaware Bankruptcy Court to compel disclosure of certain arbitration decisions and briefs pursuant to Bankruptcy Rule 2004 in *In re Armstrong World Industries, Inc.* was contrary to law.[15] In *Armstrong*, the bankruptcy court applied Federal Rule of Civil Procedure 26(c) in the context of Rule 2004, which permits a broad examination of the debtor in Chapter 11 bankruptcy cases, in finding that the insurers failed to meet their burden of demonstrating a particular need for protection.[16] The *Armstrong* court rejected the insurers' argument that the nature of ADR requires that its processes be kept confidential by distinguishing the one case relied on by the insurers for that purpose.[17] Accordingly, the bankruptcy court ordered disclosure, but limited it to an *in camera* review by the asbestos claimant

---

[14] *Gotham*, 580 F.3d at 665-66.
[15] No. 00-04471-KG (Bankr. D. Del. Sept. 8, 2003).
[16] *In re Armstrong World Indus., Inc.*, No. 00-04471-KG, Hearing Transcript 66:16-68:18 (Bankr. D. Del. Sept. 4, 2003).
[17] *Id.* at 68:17-69:10.

representatives for purposes of evaluating the insurance asset pursuant to Rule 2004.[18] Again, even if the facts and reasoning in *Armstrong* were completely analogous to the case *sub judice*, which BorgWarner has failed to show, decisions from the District of Delaware Bankruptcy Court are not binding on this Court.[19] Therefore, BorgWarner's argument, even under ideal circumstances, lacks merit.

Third, BorgWarner argues that, because numerous other courts have permitted discovery of materials subject to various confidentiality agreements, this Court should have. The two potentially binding cases cited from this Court involved the discovery of confidential settlement agreements to non-settling parties and, thus, are irrelevant to the issue of the confidentiality of and Delaware public policy favoring arbitration. The remaining cases are all federal court cases involving the discovery of materials subject to various confidentiality agreements pursuant to the Federal Rules of Civil Procedure and, thus, are also irrelevant to the issues *sub judice*.

Lastly, BorgWarner makes a last ditch attempt to undermine the Intervenors' arguments by contending that First State and other insurers have taken contradictory positions on confidentiality in asbestos bankruptcy trust cases in non-

---

[18] *In re Armstrong World Indus., Inc.*, No. 00-04471-KG, slip op. ¶ 2 (Bankr. D. Del. Sept. 8, 2003).

[19] Even further to this point, this particular *Armstrong* order and hearing transcript explicitly state, "[T]his decision shall not serve as precedent and may not be cited as such for disclosure of any additional documents of any kind or nature including, without limitation, the references to documents in the Briefs as well as in the arbitrators' decisions." *Id.* at 70:11-15.

Delaware courts. Regardless of the truth of BorgWarner's assertions regarding First State, which First State denies, such an argument is irrelevant for our purposes here, as disclosure of confidential claimant information in the context of asbestos bankruptcy trusts is vastly distinguishable from the issue of confidentiality associated with Delaware arbitrations.

### 3. Delaware Rapid Arbitration Act ("DRAA")

At the outset, BorgWarner is correct in its assertion that the Wellington ADR predated the DRAA by at least 25 years. However, BorgWarner fails to take into consideration that it is this very absence of any default, statutory rules governing the administration of a formal arbitration in Delaware at that time which compels the Commissioner to now-contemplate the rules then-established by the parties, including the intentions of the parties in the creation thereof, to govern the Wellington arbitration in 1989. Thus, it necessarily follows that, as explained by the Commissioner, under such circumstances consideration of Delaware public policy concerning alternative dispute resolution determines how much deference the Court should afford to the rules established by the Wellington parties.[20]

---

[20] Importantly, the Court notes that BorgWarner does not appear to—and nor could it in good faith—challenge the Commissioner's determination that "Delaware public policy favors arbitration and the concomitant confidentiality that naturally ensues from not having a public trial." Comm'r Order 7 (citing *LG Elecs., Inc. v. InterDigital Comm. Inc.*, 114 A.3d 1246, 1253 (Del. 2015) (citing *Elf Antochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 295 (Del. 1999))). Notably, *Elf Antochem* was decided by the Delaware Supreme Court well before the DRAA was enacted, a fact conveniently overlooked by BorgWarner.

12

As to BorgWarner's assertion that the Commissioner's Order is contrary to law based on the Commissioner's comment that "had the Wellington ADR occurred under current Delaware law, there is absolutely no doubt that the evidence presented during the proceeding would have been considered confidential," when properly read in the context in which it was made, *i.e.*, at the end of the Commissioner's analysis of Delaware public policy, the statement is nothing more than *dictum*—"A court's discussion of points or questions not raised by the record or its suggestion of rules not applicable to the case at bar."[21] Therefore, BorgWarner's argument is without merit.

## C. Waiver Under Rule 45

### 1. Waiver of Privilege by North River

BorgWarner argues that the Commissioner's modification of the scope of documents that must be produced in accordance with the subpoena is too narrow and contrary to law, because North River effectuated a waiver over all materials on the same subject matter when it introduced some Wellington documents, including the Wellington ADR decision, in another litigation, *North River Insurance*

---

[21] *See* Black's Law Dictionary (10th ed. 2014) (quoting William M. Lile, *et al.*, *Brief Making and the Use of Law Books* 307 (Roger W. Cooley & Charles Lesley Ames eds., 3d ed. 1914)) ("As a dictum is by definition no part of the doctrine of the decision, and as the citing of it as a part of the doctrine is almost certain to bring upon a brief maker adverse comment, lawyers are accustomed to speak of a dictum rather slightingly, and sometimes they go so far as to intimate a belief that the pronouncing of a dictum is the doing of a wrong.").

13

*Company v. CIGNA Reinsurance.*[22]  According to BorgWarner, "[o]nce a *party* voluntarily discloses a privileged document, that *party* is deemed to have waived privilege as to all documents involving the same subject matter, whether or not actually disclosed."[23]  However, BorgWarner fails to explain why this Court should apply this rule of partial disclosure when North River is not a party to the underlying litigation and fails to suggest that such an argument was successfully made by any party in the *North River Insurance* litigation.

In furtherance of this point and as emphasized by North River, though not addressed by BorgWarner, the justification behind the rule of partial disclosure is fairness, which the Commissioner recognized.[24]  "The extent of the disclosure is guided by the purposes behind the rule:  fairness and discouraging use of the attorney-client privilege as a litigation weapon."[25]  Where, as here, a non-party seeks to prevent the disclosure of confidential arbitration materials, the non-party

---

[22] 52 F.3d 1194 (3rd Cir. 1995).

[23] BorgWarner's Mot. for Recons. 24 (citing *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 825 (Del. 1992)) (emphasis added).

[24] *See Zirn v. VLI Corp.*, 621 A.2d 773, 781-82 (Del. 1993) ("The purpose underlying the rule of partial disclosure is one of fairness to discourage the use of the privilege as a litigation weapon in the interest of fairness."); *Citadel*, 603 A.2d at 825 ("[T]he purposes behind the rule [are] fairness and discouraging use of the attorney-client privilege as a litigation weapon."); *see also* Comm'r Order 9-10 (citing *United Health Alliance, LLC v. United Medical, LLC*, 2013 WL 1874588, at *4 (Del. Ch. May 6, 2013) ("North River cannot use evidence that was created during the Wellington ADR in litigation where it was the plaintiff and then argue that it is still confidential and not subject to disclosure in unrelated litigation.  Consistent with Delaware decisional law, the Court will not sanction North River's use of confidential information as a sword in one context and then shield that same information from disclosure in another.").

[25] *Hoechest Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 1995 WL 411805, at *3 (Del. Super. Mar. 17, 1995) (citation omitted).

14

obtains no benefit *vis-à-vis* the parties to the litigation, *i.e.*, BorgWarner, as the partial disclosure was made in another litigation not involving BorgWarner, and, thus, any further discovery of the confidential arbitration materials could only have been effectuated by an adversary of North River in that litigation upon a sufficient showing of prejudice. Therefore, BorgWarner has failed to show that the Commissioner's Order is contrary to law by way of its limited argument as to subject matter waiver.[26]

## 2. Judicial Estoppel

BorgWarner's argument that North River is judicially estopped from "now arguing" that its policies do not pay defense costs is wholly irrelevant to the issues before this Court, which arise solely as a result of a subpoena issued in conjunction with an action currently pending in Illinois state court. First, in connection with its argument, BorgWarner references pages 9-10 of the Commissioner's Order, wherein the Commissioner denounces North River's attempt to use confidential information "as a sword in one context and then shield that same information from disclosure in another" and cites to *United Health Alliance, LLC v. United Medical, LLC*, where the Chancery Court refused to allow one litigant, who partially disclosed confidential and prejudicial mediation communications to use against

---

[26] What is more, BorgWarner's subject matter waiver argument is premised on the assumption that the arbitration materials are privileged, which, on the one hand, contradicts its previous arguments, and, on the other hand, relies only on an attorney-client privilege case and not a confidential arbitration case, an important distinction discussed *supra*.

15

another litigant, to bar the other litigant's use other confidential mediation communications in its favor, as an example of Delaware's intolerance of such behavior.[27] Nowhere is the doctrine of judicial estoppel relied upon, or even referenced, by the Commissioner nor could it be reasonably imputed to the Commissioner's use of the sword and shield analogy, which is very nearly a term of art typically used by courts when discussing a waiver of privilege.

Second, on a subject matter basis alone, whether the doctrine of judicial estoppel is even applicable to North River, as a non-party to the Illinois action and an intervenor here arguing only to protect its interest in certain confidential documents requested by BorgWarner, is irrelevant when applied to the facts and circumstances before this Court. By its own words, BorgWarner acknowledges that judicial estoppel applies to "a party" and works to preclude such party from "now arguing" a position inconsistent with a previous position successfully argued in the same or earlier legal proceeding.[28] As North River is not now arguing that any policies do not pay defense costs, BorgWarner's judicial estoppel argument furnishes no basis on which to challenge the Commissioner's Order.

## Conclusion

In sum, BorgWarner has failed to show on the record that the Commissioner's Order is contrary to law, particularly where the bulk of

---

[27] Comm'r Order 9-10; *United Health*, 2013 WL 1874588, at *4.
[28] BorgWarner's Mot. for Recons. 25-26.

16

BorgWarner's arguments direct this Court to blindly follow either non-binding case law from other jurisdictions and lower courts or plainly distinguishable prior holdings of this Court.[29]

For the foregoing reasons, BorgWarner's Motion for Reconsideration is hereby **DENIED.**

**IT IS SO ORDERED.**

_____
**Judge Calvin L. Scott, Jr.**

cc:     Prothonotary

---

[29] Furthermore and for the record, BorgWarner's citation to and in-depth discussion of a—not only factually and legally distinguishable, but also non-binding—Bankruptcy Court Order that contains the express proviso that "[t]his decision shall not serve as precedent for disclosure and may not be cited as such for disclosure . . ." borders on the disingenuousness typically frowned upon by the Courts of this State. BorgWarner's Mot. for Recons. 12-14 (discussing _In re Armstrong World Indus., Inc._, No. 00-04471-KG (Bankr. D. Del. Sept. 8, 2003)); _In re Armstrong World Indus., Inc._, No. 00-04471-KG, slip op. at ¶ 4 (Bankr. D. Del. Sept. 8, 2003); _see Spanish Tiles, Ltd. v. Hensey_, 2007 WL 1152159, at *4 (Del. Super. Apr. 13, 2007) (quoting _Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc._, 175 F.R.D. 646, 652 (C.D. Cal. 1997) ("[T]he discovery system depends absolutely on good faith and common sense from counsel. The courts, sorely pressed by demands to try cases promptly and to rule thoughtfully on potentially case dispositive motions, simply do not have the resources to police closely the operation of the discovery process . . . . [Counsel] should strive to be cooperative, practical and sensible, and should turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests.").