# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT ELBURN, derivatively on behalf of INVESTORS BANCORP, INC., and individually and on behalf of himself and all other similarly situated stockholders of INVESTORS BANCORP, INC., | ) ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **C.A. No. 2019-0774-JRS** |
| ROBERT C. ALBANESE, DENNIS M. BONE, DOREEN R. BYRNES, DOMENICK A. CAMA, PETER H. CARLIN, WILLIAM V. COSGROVE, KEVIN CUMMINGS, JAMES J. GARIBALDI, MICHELE N. SIEKERKA, PAUL N. STATHOULOPOULOS and JAMES H. WARD III, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| INVESTORS BANCORP, INC., a Delaware corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted:  February 7, 2020
Date Decided:  April 21, 2020

David A. Jenkins, Esquire, Neal C. Belgam, Esquire and Jennifer M. Rutter, Esquire of Smith Katzenstein & Jenkins LLP, Wilmington, Delaware and Steven J. Purcell, Esquire, Douglas E. Julie, Esquire, Robert H. Lefkowitz, Esquire and Kaitlyn T. Devenyns, Esquire of Purcell Julie & Lefkowitz LLP, New York, New York, Attorneys for Plaintiff Robert Elburn.

Kenneth J. Nachbar, Esquire, Megan Ward Cascio, Esquire, Zi-Xiang Shen, Esquire and Miranda N. Gilbert, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, Attorneys for Defendants Robert C. Albanese, Dennis M. Bone, Doreen R. Byrnes, Domenick A. Cama, Peter H. Carlin, William V. Cosgrove, Kevin Cummings, James J. Garibaldi, Michele N. Siekerka, Paul N. Stathoulopoulos and James H. Ward III.

Susan M. Hannigan, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware, Attorney for Nominal Defendant Investors Bancorp, Inc.

**SLIGHTS, Vice Chancellor**

In 2015, the stockholders of nominal defendant, Investors Bancorp, Inc. ("Investors Bancorp" or the "Company"), voted to approve an equity incentive plan ("EIP") adopted by the Company's board of directors (the "Board"). After the stockholders approved the EIP, the Board awarded itself substantial restricted stock awards ("RSAs") and stock options under its terms (the "2015 Awards"). Kevin Cummings, a Board member and Company CEO, and Domenick Cama, also a Board member and Company President and COO, were the EIP's two largest beneficiaries.

Plaintiff, Robert Elburn, brought a derivative action in 2016 alleging the Board breached its fiduciary duties by approving the 2015 Awards (the "2016 Action"). Defendants moved to dismiss that complaint and this Court granted the motion. The Delaware Supreme Court reversed and remanded for further proceedings.[1] Shortly before trial, the parties reached a settlement (the "Settlement"). Under the Settlement, the EIP awards to Cummings and Cama were rescinded and the awards to the non-executive members of the Board were substantially reduced.

In April 2019, two months before the Settlement was presented to the Court for approval, Investors Bancorp filed its Proxy Statement (the "Proxy") for the Company's 2019 Annual Stockholders Meeting (the "Annual Meeting") during

_____

[1] *In re Inv'rs Bancorp, Inc. S'holder Litig.*, 177 A.3d 1208 (Del. 2017).

1

which, among other business, the stockholders were to vote on the reelection of four current members of the Board. The Proxy informed the stockholders that the Board intended to consider the issuance of new awards to Cummings and Cama under the previously approved EIP (the "Replacement Awards"). True to its disclosure, a month later, the Company's Compensation Committee recommended, and the Board approved, Replacement Awards for Cummings and Cama that were similar in scope to the awards that were rescinded in the Settlement.

This Court approved the Settlement in June 2019, and the Replacement Awards were granted on July 22, 2019. Elburn filed his complaint in this action (the "Complaint") two months later.

The Complaint repeats the themes of excessive compensation Elburn advanced in the 2016 Action. This time, however, he alleges Defendants breached their fiduciary duties by issuing the Replacement Awards in a *quid pro quo* arrangement between Cummings and Cama, on the one hand, and the nonemployee Board members on the other. He alleges this arrangement was part of the legerdemain that allowed the defendants in the 2016 Action to settle the claims against them by appearing to agree to substantial concessions when, in fact, Cummings and Cama gave up very little. The theory, as pled in the Complaint, is that Cummings and Cama agreed to forfeit all of their share of the 2015 Awards in the Settlement so that the nonemployee directors could pocket more of their own

2

awards, but only after the nonemployee directors secretly committed to issue the Replacement Awards after the Settlement was consummated. The Replacement Awards, therefore, were not the product of an exercise of impartial business judgment by the Board, but rather the spoils of a devious plan to nullify the effects of the Settlement and harm the Company's stockholders yet again.

Defendants have moved to dismiss the Complaint under Court of Chancery Rules 12(b)(6) and 23.1 for failure to state viable claims and failure to plead demand futility with particularity, respectively.[2] Since Rule 23.1 sets the higher pleading bar, Defendants' showcase argument is that the Complaint fails to satisfy the heightened pleading standards embedded in that rule.

When briefing Rule 23.1 motions, parties often dwell on the rather hackneyed question of whether the court should review the demand futility allegations under *Aronson* or *Rales*.[3] Not so here. Instead, the parties debate the more fundamental

---

[2] The individual defendants and nominal defendant filed separate motions to dismiss but combined briefs in support of the motions. (D.I. 7, 10, 13, 32) For clarity, references to Defendants' motion to dismiss shall include the motions filed by both the individual defendants and the nominal defendant.

[3] *See Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) (stating the test to be applied when the board that would be considering the demand made the decision that is being challenged in the derivative suit); *Rales v. Blasband*, 634 A.2d 927 (Del. 1993) (stating the test to be applied when the board that would be considering the demand did not make the decision that is being challenged in the derivative suit). *See also Reith v. Lichtenstein*, 2019 WL 2714065, at *13 (Del. Ch. June 28, 2019) (noting that the question of whether demand futility should be analyzed under *Aronson* or *Rales* is often debated even though the

question of what is required to plead a fact "with particularity" under Rule 23.1. As elemental as the question might seem, our courts have had little occasion to articulate an answer. Indeed, it appears our courts interpret the "particularized facts" rule much as National Football League officials interpret the league's so-called "catch" rule.[4] NFL officials say they know a "catch" when they see a "catch." And it appears we judges simply know "particularized facts" when we see "particularized facts."

Defendants maintain the court should construe the "with particularity" language in Rule 23.1 just as it construes the same language in Rule 9(b).[5] That is, the court should require Plaintiff to support his demand futility allegations with the so-called "newspaper facts"—who, what, when, where and how—just as the court requires of plaintiffs who attempt to plead fraud.[6] Plaintiff counters that this court

---

outcome of the case is frequently unaffected by which test the court ultimately applies) (citing cases).

[4] Official Rules of the National Football League, Rule 8, Art. 3, *Completed or Intercepted Pass* (2019).

[5] *Compare* Del. Ct. Ch. R. 23.1(a) ("The complaint shall also allege **with particularity** the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort.") (emphasis supplied), *with* Del. Ct. Ch. R. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated **with particularity**.) (emphasis supplied).

[6] *See In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (noting that the identical Federal Rule of Civil Procedure 9(b) requires "at a minimum, that plaintiffs support their allegations . . . with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when,

4

has never required this degree of particularity in the Rule 23.1 context, and for good reason. According to Plaintiff, unlike a plaintiff alleging fraud, who was likely a witness to (if not the recipient of) the fraudulent overture, the derivative stockholder plaintiff rarely, if ever, is witness to, or has direct knowledge of, the breaches of fiduciary duty he alleges in his complaint. To require the derivative plaintiff to support his pleading of demand futility with "newspaper facts," Plaintiff says, would be to impose a nigh impossible task.

Contrary to Defendants' characterization, nothing in our Rule 9(b), or the cases interpreting the rule, say that newspaper facts must be pled in every fraud case, come what may. Instead, our courts have interpreted the "with particularity" standard as requiring only that "a plaintiff [] allege the circumstances [of the fraud] with detail sufficient to apprise the defendant of the basis for the claim."[7] I see no reason to depart from, or enhance, that standard when applying the "with particularity" language in Rule 23.1. While newspaper facts *often* will be necessary to meet this standard in the fraud context, the lack of this "specificity" when pleading either fraud or demand futility is not, *de jure*, "fatal" to the claim.[8]

---

where and how' of the events at issue."); *Bamford v. Penfold, L.P.*, 2020 WL 967942, at *12 (Del. Ch. Feb. 28, 2020) (describing the "newspaper story" framework).

[7] *LVI Gp. Invs., LLC v. NCM Gp. Hldgs. LLC*, 2017 WL 1174438, at *4 (Del. Ch. Mar. 29, 2017) (addressing pleading standards for fraud under Rule 9(b)).

[8] *Id.* "Often is a word I seldom use." John Prine, *Often Is a Word I Seldom Use* (Atlantic Records 1973). It is appropriate here, however, given that, as mentioned, the plaintiff in a

Here, Plaintiff alleges that an explicit *quid pro quo* agreement was reached between Cummings, Cama and the nonemployee directors at some point during Settlement negotiations but prior to the approval of the Replacement Awards. While he has not identified the specific discussions that comprised the agreement, he has described the agreement "with detail sufficient to apprise the defendant of the basis for the claim."[9] Thus, the alleged breach of fiduciary duty that flows from the *quid pro quo* has been pled with sufficient particularity to raise a reasonable doubt that the Board could act impartially in response to a litigation demand. The Motion to Dismiss, therefore, must be denied.

## I. BACKGROUND

I have drawn the facts from the well-pled allegations in the Complaint,[10] documents incorporated by reference or integral to the Complaint and those matters of which I may take judicial notice.[11]

---

fraudulent misrepresentation case is often a direct witness to the alleged fraud and, therefore, ought to be in a position to plead the newspaper facts relating to the fraud.

[9] *LVI Gp. Invs., LLC*, 2017 WL 1174438, at *4.

[10] Citations to the Complaint are to "Compl. ¶ __."

[11] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (noting that on a motion to dismiss, the Court may consider documents that are "incorporated by reference" or "integral" to the complaint); *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006) (holding this Court may, when considering a motion to dismiss, take judicial notice of documents not subject to reasonable dispute).

## A. The Parties

Plaintiff, Robert Elburn, is, and was at all relevant times, an Investors Bancorp stockholder.[12] Elburn was also lead plaintiff in the 2016 Action.[13] He brings direct and derivative claims for breach of fiduciary duty against Investors Bancorps' directors on behalf of the Company and a purported class of Investors Bancorp stockholders.[14]

Nominal Defendant, Investors Bancorp, is a Delaware corporation with its principal place of business in Short Hills, New Jersey.[15] It is a holding company for Investors Bank, a New Jersey chartered savings bank with branches in New Jersey and New York.[16]

Defendant, Robert C. Albanese, has served on the Board since 2013.[17] Albanese was reelected to the Board in 2019, and was a defendant in the 2016 Action.[18]

---

[12] Compl. ¶ 3.

[13] *Id.*

[14] Compl. ¶¶ 116–30.

[15] Compl. ¶ 4.

[16] *Id.*

[17] Compl. ¶ 5.

[18] Compl. ¶¶ 2, 5.

Defendant, Dennis M. Bone, is Investors Bancorp's Lead Independent Director, and has served on the Board since 2013.[19] Bone was a defendant in the 2016 Action.[20]

Defendant, Doreen R. Byrnes, has served on the Board since 2002.[21] Byrnes was a defendant in the 2016 Action.[22]

Defendant, Peter H. Carlin, has served on the Board since 2017.[23] Since he joined the Board after the 2015 Awards, he was not a Defendant in the 2016 Action.[24]

Defendant, William V. Cosgrove, has served on the Board since 2011.[25] Cosgrove was a defendant in the 2016 Action.[26]

---

[19] Compl. ¶ 6.

[20] *Id.*

[21] Compl. ¶ 7.

[22] *Id.*

[23] Compl. ¶ 8.

[24] *Id.*

[25] Compl. ¶ 9.

[26] *Id.*

Defendant, James J. Garibaldi, has served on the Board since 2012.[27] Garibaldi was reelected to the Board in 2019, and was a defendant in the 2016 Action.[28]

Defendant, Michele N. Siekerka, has served on the Board since 2013.[29] Siekerka was a defendant in the 2016 Action.[30]

Defendant, Paul N. Stathoulopoulos, has served on the Board since 2018.[31] He was not a Defendant in the 2016 Action.[32]

Defendant, James H. Ward III, has served on the Board since 2009.[33] Ward was reelected to the Board in 2019, and was a defendant in the 2016 Action.[34]

Defendant, Kevin Cummings, has served on the Board and as CEO of Investors Bancorp since 2008.[35] Cummings was the Company's President until

---

[27] Compl. ¶ 10.

[28] Compl. ¶¶ 2, 10.

[29] Compl. ¶ 11.

[30] *Id.*

[31] Compl. ¶ 12.

[32] *Id.*

[33] Compl. ¶ 13

[34] Compl. ¶¶ 2, 13. I will refer to Bone, Byrnes, Carlin, Cosgrove, Garibaldi, Siekerka, Stathoulopoulos and Ward collectively as the "nonemployee directors."

[35] Compl. ¶ 14.

2018, and was elected Chairman of the Board that year.[36] Cummings was a defendant in the 2016 Action.[37]

Defendant, Domenick Cama, has served as President of Investors Bancorp since 2018, a member of the Board since 2011 and as the Company's COO since 2008.[38] He was previously the Company's Senior Executive Vice President.[39] Cama was reelected to the Board in 2019, and was a defendant in the 2016 Action.[40]

## B. The 2016 Action and the Settlement

The facts underlying the 2016 Action were fully described in opinions issued by this Court and the Supreme Court and need not be fully rehashed here.[41] In short, the Company's stockholders approved the EIP adopted by the Board in 2015.[42] Shortly thereafter, members of the Board granted themselves approximately $50 million worth of stock options and RSUs.[43] Cummings and Cama collectively

---

[36] *Id.*

[37] *Id.*

[38] Compl. ¶ 15.

[39] *Id.*

[40] Compl. ¶¶ 15, 77.

[41] *In re Inv'rs Bancorp*, 177 A.3d at 1211–17; *In re Inv'rs Bancorp, Inc. S'holder Litig.*, 2017 WL 1277672, at *1–5 (Del. Ch. Apr. 5, 2017).

[42] Compl. ¶ 17.

[43] Compl. ¶ 22.

10

received the majority of these awards, about $16.7 million and $13.4 million, respectively.[44] The Company's nonemployee directors each received an average of $2.3 million.[45]

Plaintiff filed a derivative suit in 2016 seeking rescission of the 2015 Awards alleging they were products of the Board's breach of fiduciary duty.[46] This Court granted Defendants' Motion to Dismiss in 2017, and the Supreme Court reversed the dismissal later that year.[47]

After the Supreme Court's ruling, the parties engaged in extensive settlement discussions with the aid of a skilled mediator. They agreed to the Settlement in December 2018, approximately two months before trial was scheduled to begin.[48] In the Settlement, the defendants agreed to rescind approximately 75% of the 2016 Awards.[49] The bulk of the rescinded awards belonged to Cummings and Cama, who both agreed to forfeit the entirety of their awards. For their part, each of the

---

[44] Compl. ¶ 23.

[45] Compl. ¶ 24.

[46] Compl. ¶ 32.

[47] *In re Inv'rs Bancorp*, 2017 WL 1277672, at *1; *In re Inv'rs Bancorp*, 177 A.2d at 1212.

[48] Compl. ¶ 38.

[49] Compl. ¶ 42.

11

nonemployee directors agreed to a rescission of between 33% and 44% of the awards granted to them.[50]

## C. The Replacement Awards

The parties filed a notice of the Settlement with the Court in March 2019.[51] Two months later, on May 20, 2019, the Company submitted a letter to the Court disclosing that the Company's Board had approved the grant of replacement awards to Cummings and Cama.[52] The Replacement Awards comprised 925,000 RSUs and 525,100 stock options granted to Cummings, and 740,000 RSUs and 420,096 stock options granted to Cama.[53] The Replacement Awards replenished all of the RSUs forfeited by Cummings and Cama, and about 40% of the rescinded stock options.[54] No replacement awards were considered for the nonemployee directors.[55]

The vesting schedule for the RSUs granted in the Replacement Awards was identical to the vesting schedule within the 2015 Awards.[56] Accordingly, 545,251

---

[50] Compl. ¶¶ 41, 45. To be specific, each nonemployee director defendant agreed to forfeit 250,000 stock options and 9,569.4 RSUs. Compl. ¶ 43.

[51] Compl. ¶ 45.

[52] Compl. ¶¶ 48, 81.

[53] Compl. ¶ 53.

[54] Compl. ¶ 54.

[55] *See* Compl. ¶¶ 49, 54.

[56] Compl. ¶ 55.

and 436,190 of the RSUs awarded to Cummings and Cama, respectively, were deemed to vest immediately.[57]  Additionally, the exercise price and expiration date of the stock options in the Replacement Awards matched those of the options in the 2015 Awards.[58]

The Replacement Awards were conditioned on this Court's approval of the Settlement.[59]  The Court gave that approval on June 21, 2019.  Following expiration of the thirty-day appeal period, the Settlement became final and the Replacement Awards became effective on July 22, 2019.[60]

## D. The 2019 Director Election

Investors Bancorp has a classified board structure, comprised of three classes, with one class elected each year for a three-year term.[61]  Albanese, Cama, Garibaldi and Ward were up for reelection in 2019.[62]  Each of their elections was uncontested, though the Company's bylaws provide that, if directors in uncontested elections

---

[57] *Id.*

[58] Compl. ¶ 56.

[59] Compl. ¶ 57.

[60] Compl. ¶¶ 58–59.

[61] Compl. ¶ 76.

[62] *Id.*

receive more "withheld" votes than "for" votes, then they "shall promptly tender [their] proposed resignation(s) . . . ."[63]

The Company filed the Proxy on April 11 in advance of the May 21, 2019 Annual Meeting.[64] The Proxy disclosed that the Board's Compensation Committee "intends to consider the issuance of replacement equity awards to Messrs. Cummings and Cama, in amounts to be determined by the [Compensation Committee] . . . . The process for the review and assessment of the replacement grants [] has been commenced . . . ."[65] On May 20, the day before the Annual Meeting, the Replacement Awards were approved by the Board, pending this Court's approval of the Settlement.[66] No supplemental disclosure was filed to reflect the Board's actual approval of the Replacement Awards prior to the director elections.[67] At the Annual Meeting, each of Albanese, Cama, Garibaldi and Ward were reelected.[68]

---

[63] Compl. ¶ 79.

[64] Compl. ¶ 75.

[65] Compl. ¶ 80.

[66] Compl. ¶ 81.

[67] Compl. ¶ 82.

[68] Compl. ¶ 83.

## E. Procedural History

Plaintiff did not make a pre-suit demand on the Board and alleges any such demand would have been futile.[69]  He filed his Verified Stockholder Derivative and Class Action Complaint on September 26, 2019.  Count I alleges a derivative breach of fiduciary duty claim against each of the Defendants for improperly issuing or accepting the Replacement Awards; Count II alleges a derivative unjust enrichment claim against each of the Defendants; and Count III alleges a direct breach of fiduciary duty claim brought on behalf of a purported class of Investors Bancorp stockholders against each of the Defendants for approving and issuing materially misleading disclosures before the 2019 Annual Meeting.[70]  Plaintiff seeks an order rescinding the Replacement Awards, rescinding the 2019 stockholder vote on the incumbent Board slate and directing that a new vote on the elections of Albanese, Cama, Garibaldi and Ward be held following amended disclosures regarding the Replacement Awards.[71]

Defendants moved to dismiss Counts I and II of the Complaint on October 10, 2019, and Plaintiff moved for partial summary judgment with respect to Count III

---

[69] Compl. ¶ 97.

[70] Compl. ¶¶ 116–30.

[71] Compl. ¶¶ 123, 128.

(the disclosure claim) on December 16, 2019.  The matter was submitted for decision on February 7, 2020.

## II.  ANALYSIS

As noted, two motions are submitted for decision: Defendants' motion to dismiss Counts I and II of the Complaint and Plaintiff's motion for partial summary judgment on Count III.  I address the motions in turn.

### A. Plaintiff Has Pled Sufficiently Particularized Facts To Excuse Demand

"A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation."[72]  As litigation brought by stockholders on the company's behalf "impinges on the managerial freedom of directors," Court of Chancery Rule 23.1 "exists at the threshold [] to insure that a stockholder exhausts his intracorporate remedies" prior to filing a derivative action.[73]  With that imperative in mind, Rule 23.1 requires stockholders either to make a pre-litigation demand on the Board, or if they fail to do so, to demonstrate why demand would have been futile.[74]  If the stockholder elects to allege demand futility, he must do so in compliance "with [the]

---

[72] *Aronson*, 473 A.2d at 811.

[73] *Id.*

[74] Del. Ct. Ch. R. 23.1(a).

16

stringent requirements of factual particularity [within Rule 23.1] that differ substantially from . . . permissive notice pleadings.'"[75]

Where, as here, the substantive acts of a board of directors are challenged, demand is excused if the complaint raises a reasonable doubt that "the directors are disinterested and independent and the challenged transaction was otherwise the product of a valid exercise of business judgment."[76] While reasonable doubt in this context must be the product of well-pled, particularized facts, the court is still obliged to "draw all reasonable inferences in the plaintiff's favor."[77]

### 1. Illicit *Quid Pro Quo* Agreements in Executive Compensation

Ordinarily, a director's decision to approve executive compensation awards is entitled to business judgment deference.[78] Thus, merely pleading that Cummings and Cama were lavishly compensated would likely be an insufficient factual predicate for Plaintiff's Complaint to survive a motion to dismiss.[79] That is not the track Plaintiff has taken, however. Instead, he seeks to invoke a line of authority

---

[75] *In re LendingClub Corp. Deriv. Litig.*, 2019 WL 5678578, at * 6 (Del. Ch. Oct. 31, 2019) (quoting *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000)).

[76] *Aronson*, 473 A.2d at 814.

[77] *Marchand v. Barnhill*, 212 A.3d 805, 818 (Del. 2019).

[78] *Brehm*, 746 A.2d at 263.

[79] *Id.*

where this court has recognized that board members may be held liable for breaching their duty of loyalty if their decision to approve executive compensation is part of a broader self-dealing transaction.[80] Such illicit *quid pro quo* arrangements will be evaluated "as a single, interrelated set of [self-interested] transactions" under the entire fairness standard of review.[81] And directors who are alleged to have participated in a well-pled *quid pro quo* arrangement will be deemed "interested" for purposes of a demand futility inquiry.[82]

Defendants do not seriously challenge the legal foundation for Plaintiff's breach of fiduciary claim. Instead, they contest the adequacy of Plaintiff's factual pleading of the supposed *quid pro quo* arrangement between Cummings, Cama and the nonemployee directors.[83] In response, Plaintiff argues that Defendants expect

---

[80] *See Needham v. Cruver*, 1993 WL 179336, at *3 (Del. Ch. May 12, 1993) (explaining that an illicit *quid pro quo* occurs in the executive compensation context when a board agrees to award compensation only if its members receive some personal benefit or advantage in return); *Noerr v. Greenwood*, 1997 WL 419633, at *9–10 (Del. Ch. July 16, 1997); *In re Nat'l Auto Credit, Inc. S'holders Litig.*, 2003 WL 139768, at *8–9 (Del. Ch. Jan. 10, 2003).

[81] *In re Nat'l Auto Credit*, 2003 WL 139768, at *9; *see also Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1162 (Del. 1995) ("Where . . . the presumption of the business judgment rule has been rebutted, the board of directors' action is examined under the entire fairness standard.").

[82] *In re Nat'l Auto Credit*, 2003 WL 139768, at *9; *see Cambridge Ret. Sys. v. Bosnjak*, 2014 WL 2930869, at *3–4 (Del. Ch. June 26, 2014) (holding that directors who awarded themselves compensation are considered interested for purposes of pleading demand futility).

[83] Opening Br. in Supp. of Defs.' Mot. to Dismiss ("Defs.' OB") 24; Oral Arg. on Defs.' Mot. to Dismiss and Pl.'s Mot. for Partial Summ. J. ("OA") 9 ("Conclusory allegations

too much at the pleading stage, and maintains he has more than adequately described the *quid pro quo* scheme hatched by all members of the Board in advance of the Settlement that led to the Replacement awards.[84] The parties' positions reveal a fundamental disagreement over the degree of particularity with which Plaintiff is obliged to plead facts in support of his demand futility allegations. It is appropriate, therefore, to dilate on Rule 23.1's "with particularity" pleading standard before turning to the adequacy of Plaintiff's allegations.

## 2. Rule 23.1's With Particularity Pleading Standard

While this court routinely recites the need to plead "particularized facts" when addressing the question of demand futility, it rarely has occasion to discuss precisely what this means in the Rule 23.1 context.[85] As support for his endorsement of a more pragmatic approach to "with particularity" pleading, Plaintiff cites to case law explaining that particularized facts are simply "allegations of specific fact."[86]

---

aren't permitted. And there is nothing more conclusory than they were promised that they'd get whatever they want. That is, there is no specific fact, there is no particularized fact [pled].").

[84] Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s AB") 27–28; D.I. 33; OA 47–48.

[85] At oral argument the Court asked the parties to provide additional submissions clarifying the issue. OA 63. Those responses are docketed as D.I. 32–34.

[86] D.I. 33 (citing *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008); *Sciabacucchi v. Liberty Broadband Corp.*, 2018 WL 3599997, at *10 (Del. Ch. July 26, 2018); *In re China Agritech, Inc. S'holder Deriv. Litig.*, 2013 WL 2181514, at *14–15 (Del. Ch. May 21, 2013)).

Defendants respond that Rule 23.1's reference to facts pled "with particularity" means precisely what that same phrase means as used in Rule 9(b).[87] In this regard, Defendants argue when statutes (or rules) use identical language, the terms are presumed to have the same meaning.[88] And they point to language in prior opinions of our Supreme Court where the Court appears to refer to the particularity requirements of Rules 9(b) and 23.1 interchangeably.[89]

To be sure, pleadings under Rule 23.1 are "held to a higher standard" than the notice pleading standard codified in Rule 8(a).[90] Indeed, it is generally understood that for a fact to be pled "with particularity," it must have some indicia of specificity.[91] On the other hand, our courts uniformly recognize that even

---

[87] D.I. 32 (citing *State v. Highfield*, 152 A. 45, 52 (Del. 1930); *New Castle Cty. Dept. of Land Use v. Univ. of Del.*, 842 A.2d 1201, 1207 n.16 (Del. 2004)).

[88] *Id.*

[89] *See Brehm*, 746 A.2d at 254 ("Pleadings in derivative suits are governed by Chancery Rule 23.1, just as pleadings alleging fraud are governed by Chancery Rule 9(b). Those pleadings must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings governed solely by Chancery Rule 8(a)."); *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 140 (Del. 1997) ("[a] requirement that the pleader state facts 'with particularity' is reserved for derivative stockholder claims under Chancery Rule 23.1 and for fraud or mistake claims under Rule 9(b).").

[90] *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009); *Brehm*, 746 A.2d at 254.

[91] *Liberty Broadband*, 2018 WL 3599997, at *10; *see In re Citigroup*, 964 A.2d at 134 ("Instead of providing factual allegations regarding the knowledge or bad faith of the

20

heightened pleading standards do not require a plaintiff to "plead evidence," or to plead facts "sufficient to sustain a judicial finding" that a demand board is interested or lacks independence.[92]

While these pleading rules of the road offer some guidance, the question remains whether a plaintiff attempting to plead demand futility must do so with the same degree of factual particularity often required of a plaintiff attempting to plead fraud. In the fraud context, our courts frequently hold that to meet the "particularity" requirement of Rule 9(b), the plaintiff must plead: "(1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations."[93] In most instances, requiring the plaintiff to plead these so-called "newspaper facts" in support of a fraud claim makes good sense since it is reasonable to expect that one

---

individual director defendants, the Complaint makes broad group allegations about the director defendants or the members of the ARM Committee.").

[92] *In re China Agritech*, 2013 WL 2181514, at *14–15 (quotation omitted).

[93] *Abry P'rs V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006). The particularity requirements of Rule 9(b) trace back to "the English procedure under the Judicature Act" and reflect a desire to safeguard defendants "from lightly made claims charging the commission of acts that involve some degree of moral turpitude." 5A Arthur R. Miller et al., *Federal Practice and Procedure* § 1296 (4th ed.), Westlaw (database updated Aug. 2019) [hereinafter Wright & Miller].

who alleges that a misrepresentation induced him to act will be able to describe the facts and circumstances of the misrepresentation in detail.[94]

This rationale for requiring a plaintiff to plead newspaper facts describing an alleged fraud under Rule 9(b) falls away, however, when a stockholder attempts to plead a derivative breach of fiduciary claim under Rule 23.1. Even with Section 220 documents in hand, derivative plaintiffs would be hard pressed to plead similar "who, what, when, where and how" facts about fiduciary wrongdoing when they were not in the boardroom and, unlike fraud, were not the direct targets of the wrongful behavior.

In my view, the better paradigm in which to assess particularity in the Rule 23.1 context is the one in which courts contextually evaluate allegations of fraudulent omission. Where the plaintiff alleges fraud by omission, courts generally "relax Rule 9(b)'s fraud pleading requirement."[95] Of course, derivative plaintiffs

---

[94] *See Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 142 (Del. Ch. 2009) (noting a lack of discovery "poses no impediment to a plaintiff's ability to plead the circumstances constituting fraud. After all, the plaintiff was there."); *LVI Gp. Invs., LLC v. NCM Gp. Hldgs., LLC*, 2018 WL 1559936, at *11 (Del. Ch. Mar. 28, 2018) ("Where, as here, a plaintiff premises her fraud claim on written contractual representations, it is relatively easy to plead a particularized claim.") (quotation omitted); *Bamford*, 2020 WL 967942, at *12 ("Delaware law [] recognizes that [t]he test of whether an attempted pleading of fraud states sufficient 'circumstances' to satisfy Rule 9 is not scientific.") (quotation omitted).

[95] *See JP Morgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1245 n.201 (Del. Ch. 2019) (quoting Wright & Miller § 1298). Although Delaware courts have not frequently opined on the difference between fraudulent omission and misrepresentation cases, "[s]ince our Court of Chancery rule is modeled after the federal rule [9(b)], we look to federal decisional

frequently seek to hold fiduciaries liable for their actions, not their omissions.  In this sense, the fraudulent omission cases are obviously distinguishable.  But these cases do persuasively make the point that context matters when assessing the adequacy of particularized pleading.[96]  No rational pleading standard can require a plaintiff to plead specific facts that he has no means to know.[97]

---

law in construing the Court of Chancery Rule." *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1208 n.8 (Del. 1993).  Federal Courts have frequently discussed these different pleading standards when applying the identical Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Flynn v. Everything Yogurt*, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993) (noting that omissions "cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation."); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997) (noting that a "[p]laintiff is unable to specify the time and place [in an omission case] because no act occurred"); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009) ("Requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut [] laws prohibiting fraud-by-omission"); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007) ("Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as a plaintiff in a false representation claim.").

[96] *See Phillips v. Del. Power & Light Co.* 194 A.2d 690, 697 (Del. Super. Ct. 1963) ("Less particularity is required [under Rule 9(b)] when the facts lie more in the knowledge of the opposite party")(quotation omitted); *see also Rinaldi v. Iomega Corp.*, 1999 WL 1442014, at *6 (Del. Super. Ct. Sept. 3, 1999) (noting "[t]he requirement of pleading negligence in accordance with [Superior Court] Rule 9(b) must be applied in the light of the particular situation presented[,]" and accepting plaintiffs' argument that "it would be impossible for Plaintiffs to plead negligence with any more specificity" in a case where "the specific facts and details of the manufacture and design of the [allegedly negligently designed product] are solely within the knowledge of Defendant . . . .").

[97] It is worth repeating here that our courts do not require a plaintiff to plead newspaper facts in all cases of fraudulent misrepresentation, a view entirely consistent with the context-driven analysis I endorse and have undertaken here.  *See LVI Gp. Invs., LLC*, 2017 WL 1174438, at *4 (noting that a failure to plead newspaper facts will not, as a matter of law, be "fatal" to a fraudulent misrepresentation claim); *Yavar Rzayev, LLC v. Roffman*,

With this in mind, I think Chancellor Allen's articulation of Rule 9(b)'s pleading requirements in *Kahn Brothers & Co., Inc. Profit Sharing Plan and Trust v. Fischbach Corp.*[98] provides a useful guidepost for Rule 23.1 pleading as well. In *Kahn*, the court observed, "[g]enerally, it may be said that an allegation of fraud is legally sufficient under Rule 9(b) if it informs 'defendants of the *precise transactions at issue*, and the fraud alleged to have occurred in those transactions, so as to place defendants *on notice of the precise misconduct with which they are charged*.'"[99]  In my view, this standard exalts the immutable understanding that

---

2015 WL 5167930, at *4 (Del. Super. Aug. 31, 2015) ("Delaware courts have adopted the reasoning of the Third Circuit in [*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984)] and consistently found that the date, place, and time allegations are not required so long as the pleadings put defendants on notice of the misconduct with which they are charged and protect defendants against false charges of immoral or fraudulent behavior.); *Sammons v. Hartford Underwriters Ins. Co.*, 2010 WL 1267222, at *4 (Del. Super. Apr. 1, 2010) ("an excessive focus on particularity . . . could impair the flexibility and the just determination of cases."). The same contextual orientation is indeed embedded within Rule 9(b) itself, which implicitly recognizes that it would be "unworkable and undesirable" to require a plaintiff to plead state of mind or knowledge, which a plaintiff would have no basis to know, with particularity.  *Abry P'rs*, 891 A.2d at 1050.  It is also reflected, albeit not overtly, in Rule 23.1, which only requires that the plaintiff plead "with particularity the efforts, if any, *made by the plaintiff* to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort."  In other words, the plaintiff is to plead with particularity what *he did* or what *he chose not to do* (and why).  These are facts uniquely within his grasp.

[98] 1989 WL 109406 (Del. Ch. Sept. 19, 1989).

[99] *Id.* at *4 (emphasis added) (citation omitted).  *See also Bamford*, 2020 WL 967942, at *12 (citing *Kahn* and noting that the test for particularity under Rule 9(b) "is not scientific"); Wright & Miller § 1298 ("Perhaps the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) is

24

derivative complaints will be "held to a higher standard [] than [] the permissive notice pleading standard of Court of Chancery Rule 8(a)," while recognizing that a derivative plaintiff rarely has access, pre-discovery, to the facts that would allow him to recount a fly-on-the-wall's perspective of the alleged fiduciary misconduct he is attempting to plead.[100]

### 3. Plaintiff Has Pled a *Quid Pro Quo* With Particularity

Plaintiff's "*quid pro quo*" theory is articulated throughout the Complaint,[101] but is pled most succinctly in Paragraph 100.

> As described above, each of these directors were able to retain a substantial portion of their challenged awards *only* because Cummings and Cama had agreed to forfeit *all* of their awards as part of the Settlement. As it turned out, Cummings and Cama's agreement came with strings attached: *Before Agreeing to the Settlement*, Cummings and [Cama] sought, and received, an undisclosed assurance from the Board's non-employee directors that they would "replace" the awards Cummings and Cama were agreeing to give up, in an amount acceptable to Cummings and Cama.[102]

---

the determination of how much detail is necessary to give adequate notice to an adverse party and to enable that party to prepare a responsive pleading.").

[100] *Citigroup*, 964 A.3d at 120 (explaining that derivative complaints must clear a higher bar than those governed by Rule 8(a)); *Rinaldi*, 1999 WL 1442014, at *6 (finding a failure to plead facts solely within the knowledge of defendants did not warrant dismissal of a complaint under Superior Court Rule 9(b)).

[101] *E.g.,* Compl. ¶1 ("This action seeks to hold the Board accountable for granting equity awards to 'replace' previously ill-gotten equity awards that were forfeited in a settlement that resolved a lawsuit against the Board.), ¶ 65 (alleging that the nonemployee directors were able to secure Cummings and Cama's cooperation with respect to the Settlement by "assur[ing] [them] that they would be taken care of . . . as soon as reasonably practicable.").

[102] Compl. ¶ 100 (emphasis added).

This plainly describes the specific misconduct in which each Defendant is alleged to have participated and the bases upon which Plaintiff alleges that an illicit *quid pro quo* arrangement led to the Replacement Awards. While likely unnecessary, it also puts Defendants on notice of *when* the alleged misconduct occurred, *who* allegedly participated and *what* motivated the nonemployee directors to breach their fiduciary duties. In my view, these facts are pled with sufficient particularity under Rule 23.1 to raise a reasonable doubt as to Defendants' fitness to consider a demand.

I acknowledge that Defendants have wholeheartedly denied that any *quid pro quo* occurred.[103] As frequently noted by Delaware courts, executive compensation decisions are as work-a-day as board decisions get and, absent a *quid pro quo*, the Replacement Awards would be entitled to "great deference."[104] Targeted discovery is likely to reveal rather quickly if the *quid pro quo* agreement alleged in the Complaint was actually reached. If it was not, Defendants are likely to earn summary judgment. But, at the pleading stage, I must take all particularized allegations as true and draw all reasonable inferences in Plaintiff's favor.[105] As the

---

[103] Defs.' OB 24; OA 20–22.

[104] *Brehm*, 746 A.2d at 263; *Tornetta v. Musk*, 2019 WL 4566943, at *1 (Del. Ch. Sept. 20, 2019).

[105] *Rales*, 634 A.2d at 931.

26

Complaint has sufficiently alleged the existence of a *quid pro quo*, Defendants' Motion to Dismiss Counts I and II of the Complaint must be denied.[106]

## B. The Director Elections

Plaintiff has moved for summary judgment on Count III of the Complaint, where he asserts a direct claim for breach of fiduciary duty based on deficient disclosures.[107]  Specifically, he argues there is no genuine dispute of material fact that Defendants withheld information from the stockholders in advance of the 2019 Annual Meeting that would have been material to them when deciding whether to reelect Albanese, Cama Garibaldi and Ward to the Board.[108]  He seeks an order declaring the election results void and ordering a new stockholder vote on director elections.[109]

There is no "right" to summary judgment.[110]  Instead, summary judgment is only granted when "there is no genuine issue as to any material fact and [] the

---

[106] By clearing the more exacting Rule 23.1 hurdle, Plaintiff has also stated a claim under Rule 12(b)(6). *See generally, In re Clovis Oncology, Inc. Deriv. Litig.*, 2019 WL 4850188, at *15 (Del. Ch. Oct. 1, 2019).

[107] D.I. 19.

[108] Pl.'s Opening Br. in Supp. of Its Mot. for Partial Summ. J. ("Pl.'s OB") 2–4.

[109] Compl. ¶ 128.

[110] *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002).

moving party is entitled to judgment as a matter of law."[111]   In deciding a summary judgment motion, "the court must view the evidence in the light most favorable to the non-moving party."[112]

"[D]irectors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action."[113] "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote."[114]   "The duty of complete disclosure [] appl[ies] with equal force to supplemental as well as original proxy materials . . .  If subsequent events impart a new and significant slant on information already discussed, their disclosure is mandated."[115]

Plaintiff argues Defendants violated their duty of disclosure on two fronts. *First*, he says, the Proxy's disclosure that "[t]he process for review and assessment of replacement grants to Messrs. Cummings and Cama had been commenced"

---

[111] Del. Ct. Ch. R. 56(c).

[112] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992).

[113] *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992).

[114] *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S 438, 449 (1976)).

[115] *Kahn v. Household Acquisition Corp.*, 591 A.2d 166, 171 (Del. 1991).

is materially misleading because, at the time the Proxy was issued, the process for approving the Replacement Awards was further along than stockholders were being told.[116] *Second*, he alleges Defendants had an obligation to supplement the Proxy immediately before the stockholder vote to apprise stockholders that the Replacement Awards under Board consideration had been approved.[117]

As for Plaintiff's first argument, the Proxy, as issued, is not materially misleading with respect to the status of the Board's consideration of the Replacement Awards. Defendants disclosed they were "considering" new equity compensation awards for Cummings and Cama, and that is exactly what they were doing.[118] Plaintiff splits hairs when he argues that internal documents showing the Replacement Awards were being substantively negotiated reveal that the Board was doing more than "considering" the awards, as disclosed in the Proxy.[119] But the discrepancy Plaintiff has conjured between "considered" and "negotiated" is not enough to state a viable disclosure claim, much less carry his burden to earn summary judgment on that claim.

---

[116] Pl.'s OB 25–27.

[117] Compl. ¶¶ 80–83.

[118] Defs.' Answering Br. in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Defs.' AB"), Ex. C (the "Proxy") at 42.

[119] Pl.'s OB 26–27.

Plaintiff's "failure to supplement" claim rests on firmer ground. Defendants cannot meaningfully dispute that the Proxy was rendered stale when the Board actually approved the Replacement Awards. By the time of the vote, shareholders knew only that the Board had "commenced" a "process for the review and assessment of replacement equity grants to Messrs. Cummings and Cama[,]" and that a compensation consultant and outside legal counsel had been retained.[120] In reality, when the shareholders cast their vote at the Annual Meeting on May 21, 2019, the Compensation Committee had completed its "process," had recommended issuance of the Replacement Awards and the full Board had voted to approve the awards.[121] "[S]tating an outcome as a possibility, that in fact is not a possibility, is misleading."[122]

The question, then, is whether this omission is material. Defendants argue the omitted facts cannot be material as "[a] reasonable stockholder could expect that by the time of the Annual Meeting, over a month [after the Proxy was filed], the decision-making process would likely have progressed, potentially to the point of

---

[120] Proxy at 42.

[121] Compl. ¶¶ 51–53, 75; Defs.' AB, Ex. G, at 2.

[122] *Chatham Asset Mgmt., LLC v. Papanier*, 2017 WL 6550428, at *5 (Del. Ch. Dec. 22, 2017) (quoting *Dorchester Inv'rs v. Peak Int'l Ltd.*, 134 F. Supp. 2d 569, 579 (S.D.N.Y. 2001)).

actually determining the awards."[123]  Additionally, they note the Replacement Awards were not actually effective until July 22, and the Board caused an 8-K to be filed that day informing stockholders that the Replacement Awards the Board had previously approved were now live.[124]  Under these circumstances, they argue, a supplemental disclosure alerting stockholders the Replacement Awards had been approved by the Board would not have significantly altered the total mix of information available at the time of the vote.[125]

At this stage, I am satisfied the question of materiality relating to the failure to supplement is more nuanced than Plaintiff makes out.  While the Board had completed its "process" and approved the Replacement Awards before the Annual Meeting, the Replacement Awards were still conditioned on the Court's approval of the Settlement, and therefore not final as of the time of the stockholder vote.[126]  Moreover, the stockholders had already approved the EIP from which the Replacement Awards were to be drawn.[127]  This approval suggests, at least, that the stockholders understood and approved of the EIP, the manner in which awards under

---

[123] Defs.' AB 18.

[124] Defs.' AB 19–21; Defs.' AB, Ex. G.

[125] *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1277 (Del. 1994).

[126] Defs.' AB, Ex. G, at 2.

[127] Compl. ¶ 21.

31

the EIP would be made and the purpose of such awards. Thus, while the stockholder approval of the EIP did not leave the Board unaccountable for the awards it chose to make under that plan, as our Supreme Court has made clear,[128] the fact of the stockholder approval makes the materiality inquiry more challenging than Plaintiff's summary judgment argument allows. Finally, I note that the cases Plaintiff cites where this court has ordered new director elections involved far more serious malfeasance than the disclosure violations Plaintiff has alleged here.[129]

For these reasons, it is, in my view, "desirable to inquire [more] thoroughly into" the facts relating to the materiality of the failure to supplement.[130] Accordingly, Plaintiff's motion for partial summary judgment must be denied.

---

[128] *In re Inv'rs Bancorp*, 177 A.3d at 1208.

[129] *See Millenco L.P. v. meVC Draper Fisher Jurvetson Fund I, Inc.*, 824 A.2d 11, 13–18 (Del. Ch. 2002) (invalidating director elections where defendants failed to disclose relationships between supposedly independent directors and insider directors, and that the nondisclosure appeared to contravene SEC regulations); *Flaa v. Montano*, 2014 WL 2212019, at *9–11 (Del. Ch. May 29, 2014) (ordering a new director election, pursuant to 8 *Del. C.* § 225, where the majority of the prior board had been replaced by a misleading stockholder consent).

[130] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962). *See also In re Tele-Comm., Inc. S'holders Litig.*, 2005 WL 3642727, at *3 (Del. Ch. Jan. 10, 2006) (noting that materiality in the disclosure context "is generally considered an issue of fact" and that summary judgment on such claims should be reserved for cases where materiality is "so obvious[] . . . that reasonable minds cannot differ on the question . . . .").

## III. CONCLUSION

Defendants' Motion to Dismiss Counts I and II of the Complaint is **DENIED**.

Plaintiff's Motion for Partial Summary Judgment as to Count III of the Complaint is

also **DENIED**.

**IT IS SO ORDERED.**